**The People of the State of Illinois, Plaintiff-Appellee, v. Willie Robinson, Defendant-Appellant.**

Gen. No. 67–99.

Third District.

November 7, 1969.

L. Park Davis, of Joliet, for appellant.

Louis Bertani, State's Attorney, and Harry D. Leinenweber, Special Prosecutor, of Joliet, for appellee.

ALLOY, J.

Appellant Willie Robinson, following an indictment for murder, was found guilty of voluntary manslaughter. He was sentenced to an indeterminate term for the crime of voluntary manslaughter for not less than one year nor more than 20 years in the Illinois State Penitentiary, with a minimum fixed at 10 years and a maximum at 14 years. The sole question presented for review in this Court is whether the sentence imposed by the Court is excessive and should be reduced.

The Supreme Court of this State in People v. Smith, 14 Ill2d 95, 150 NE2d 815, referring to the standards to be employed by courts of review in determining whether or not to reduce a sentence, stated specifically

that, where the sentence is within the limits prescribed by the legislature, the court of review should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose, or that the penalty is manifestly in excess of the proscription of Section 11 of Article II of the Illinois Constitution which requires that all penalties shall be proportioned to the nature of the offense. The court also indicated that, in passing sentence upon a criminal who is found guilty, the trial judge is invested with the judicial discretion within the limits fixed by law and it is only where that discretion has been abused or when a defendant has been materially prejudiced by the procedure which the courts adopt in conducting the inquiry that a court of review will interfere with a judgment pronounced.

It is noted that, in the case before us, the penalty itself is within the limits prescribed by the legislature. By the terms of chapter 38, § 9–2(c), 1967 Ill Rev Stats, it is provided that a person convicted of voluntary manslaughter shall be imprisoned in the penitentiary from one to 20 years. The sentence in the cause before us recites such indeterminate sentence but specifies the minimum at 10 years and the maximum is fixed at 14 years. Therefore, the sentence imposed in the case before us is clearly within the limits prescribed by the legislature.

 In determining whether the sentence constituted a departure from fundamental law or its spirit and purpose or is so manifestly excessive as to be violative of the due process provision of the Illinois Constitution, we must look to the facts of the case. In the cause before us, the record discloses that defendant and a friend, after drinking alcoholic beverages, attempted to hitchhike to Aurora, Illinois, from Joliet, at 1:00 a. m. on the morning of June 19, 1968. It was disclosed that while

these persons were attempting to hitchhike the defendant saw the decedent coming out of the rear of a restaurant and walking toward his automobile in the back of the parking lot. Defendant and his companion then ran across the street and shouted and whistled at the decedent and advanced toward him and his automobile in the parking lot. When the defendant approached the decedent he was struck by the decedent in the face with an iron-lug wrench. Defendant then wrestled with the decedent and was finally able to push him down and, as he did so, decedent struck his head against the concrete retaining bumper. Defendant at this time also picked up a rock or brick. Decedent's head wounds were later found to have dirt on the wounds. There was evidence that defendant struck the decedent in the head "two or three times" even though his companion asked him not to strike the decedent. Defendant and his companion then ran from the scene and were later apprehended by the police. Defendant denied striking decedent with a rock or brick.

The trial court, as the trier of facts, found from the evidence that the defendant had actually tried to hitchhike a ride but that decedent thought he was to be victimized at that hour of the morning. The court found that the act of decedent in striking defendant with the lug wrench amounted to a serious provocation, but in view of the size and age of the victim, the beating given to him by defendant was unjustified. The court further found that the presence of black earth in the wounds on the top of the head of the decedent compelled a conclusion that defendant struck decedent on the head with a rock or brick and that there was no evidence of self defense.

On appeal in this cause, defendant cites People v. Mitchell, 73 Ill App2d 35, 220 NE2d 19. In that case, the Appellate Court reduced a sentence of 25 years in the penitentiary for the crime of murder to a sentence of

14 years. In that case it was disclosed that defendant and decedent had been fighting; that the decedent had actually started the fight; was armed with a knife, and had cut defendant in the back. The evidence also disclosed that at the time the defendant killed the decedent, the decedent was attempting to flee in a car and that defendant had chased and shot him. The primary issue before the court of review was whether defendant should have been found guilty of murder or voluntary manslaughter. The Appellate Court felt that this was a question of fact for the trier of fact to determine and that it ought not to be disturbed. It is obvious from such case that the Appellate Court reduced the sentence because of the circumstance that defendant was found guilty of murder. While there are similarities in the Mitchell case factually to the instant case, we do not believe that it is a precedent justifying a reduction of the sentence in the cause before us.

In the case of People v. Millet, 60 Ill App2d 22, 208 NE2d 670, defendant Millet was convicted of voluntary manslaughter and sentenced to a term of not less than 8 nor more than 16 years in the penitentiary. In that case decedent had been a former boyfriend of a Katherine King. Defendant had replaced decedent as the lady's boyfriend. Two months before the homicide, the decedent and defendant had an argument in Katherine's kitchen in which decedent allegedly wielded a butcher knife and chased defendant from the premises. The day of the homicide the decedent appeared at Katherine's apartment in an intoxicated condition. She left her apartment and entered a friend's apartment in the same building, leaving decedent on the front porch. Shortly thereafter defendant arrived with three male companions. They entered the apartment where Katherine was present, without incident. Decedent then attempted to enter the apartment at this time seeking to use the bathroom. He was not permitted to do so and later crossed the street

327

in front of the apartment toward his automobile. Shortly thereafter, defendant and his three companions and Katherine left the apartment. Defendant testified that, as he turned to go toward his own automobile, decedent called to him that he wanted to see defendant. Defendant told decedent that he did not want any trouble with him and not to bother him. Decedent lifted the trunk cover of his automobile and told defendant he was going to kill him. Defendant warned decedent not to take anything from the trunk. Defendant then drew his gun and fired three times, killing decedent. An examination of the trunk of decedent's car showed that it was loaded with tools, but contained no guns. In the Millet case the defendant contended that his sentence had been too severe. The Appellate Court refused to modify the sentence, stating there was an insufficient basis for interference under the record presented and that in its opinion the sentence was not unduly severe.

In the case of People v. Miller, 33 Ill2d 439, 211 NE2d 708, the Supreme Court likewise refused to reduce the term of not less than 14 years nor more than 20 years in the penitentiary for the crime of voluntary manslaughter. In that case, defendant had called the police and notified them of the death of a prostitute who had died of strangulation at his hands. According to the defendant, the prostitute had deliberately attempted to overcharge him and, when he objected, had threatened to inform his wife. Defendant testified that he only intended to frighten the decedent by putting his hands on her throat and shaking her. He denied any intention of killing her. On the basis of our review of the cases referred to, and other precedents in this State, and in view of the fact that the sentence was in line with sentences previously upheld by Appellate Courts and the Supreme Court of this State, we do not believe we would be justified in reducing the sentence. As stated in People v. Hobbs, 56 Ill App2d 93, 205 NE2d 503 (at pages 98–99):

"On appeal, it is only under rare and unusual circumstances that a reviewing court will interfere with the discretion of a trial judge in the imposition of a sentence. The Appellate Court, in reviewing a trial court's discretion in fixing punishment, will make allowance for the trial court's opportunity of observing witnesses and hearing them testify. The imposition of sentence is peculiarly within the discretion of the trial court, and unless clearly abused, the reviewing court will not interfere therewith. Accordingly, before an Appellate Court will interfere, it must be manifest from the record that the sentence is excessive and not justified by any reasonable view which might be taken of the record."

It is further contended that the procedure adopted by the trial court in conducting the inquiries required by the Criminal Code prior to sentencing prejudiced the defendant. It is specifically stated that the trial court was prejudicially influenced by a certain paragraph of the probation officer's report, by the listing in the probation officer's report, of various times the defendant was questioned by police, and by testimony of the police officers at the hearing on mitigation and aggravation. The record discloses that at the probation hearing, the trial court received a written report from the county probation officer. A certain portion of that report was objected to by defendant and the same was ordered stricken without objection from the State. The court stated specifically:

"Paragraph four of the probation officer's report is stricken from the record in the report, and the court will add that the contents of paragraph four are not considered by the court and will not be considered by the court for any purposes whatsoever in relation to the final disposition of this case . . . and without getting involved in an argument on human psychology, I will say I am confident I can

329

and will disregard anything in connection with paragraph four of the report in arriving at the final disposition of the case."

At the hearing on aggravation and mitigation, the only evidence submitted was that on behalf of the People and consisted of the testimony of two Joliet police officers. They testified that they were well acquainted with defendant and their testimony was confined to the moral character and life of the defendant as they knew it from first hand information. They testified as to defendant's opinion of police officers, the defendant's family, and the propensity to make violent statements. They did not testify about any criminal charges made against defendant which were not sustained by convictions. This was specifically pointed up in the record. There was no evidence submitted on behalf of defendant.

On appeal in this Court, defendant relies on the case of People v. Grigsby, 75 Ill App2d 184, 220 NE2d 498, to support his contention of material prejudice by the probation report and the hearing on aggravation and mitigation. In the Grigsby case, the Appellate Court reduced a sentence of not less than 5 nor more than 15 years in the penitentiary for the crime of burglary, to a sentence of not less than 2 nor more than 5 years. In that case the prosecution presented testimony of a police officer at the probation hearing to the effect that defendant was involved in an investigation regarding a holdup which had occurred after the date of the offense for which defendant had been convicted. This was objected to, in part, on the basis that the witness had no personal knowledge about the holdup or defendant's involvement. The prosecution prior to the denial of probation had filed with the trial court a motion to increase bail because of the assertion that defendant had been charged with aggravated battery and attempted murder. Subsequently, both charges were dismissed for lack of probable

cause. Defendant moved for a change of venue prior to sentencing because of adverse publicity, but such motion was denied. The prosecution then moved that the evidence heard at the probation hearing be considered by way of mitigation and aggravation. Defendant objected and neither the People nor the defendant produced any other evidence. On appeal, the prosecution filed a motion suggesting diminution of the record, which motion the Appellate Court thought was motivated by the desire of the prosecution to prejudice the Appellate Court. The court stated specifically there (at page 192) that the court was unable in that case to state that the prosecutor had fulfilled his duty toward either the defendant or the court. The court also pointed out that bond was increased on charges on which the defendant had not been convicted and that the people brought to the attention of the court and kept before the court the impression that the defendant was an habitual felon. It was not supported by the record. The prosecution, also, over objection, produced evidence as to details of a crime allegedly committed, after the plea of guilty in the cause before it, in a neighboring county and, thus, invited the court also to take the matter into consideration as aggravation in the instant case. The Appellate Court indicated that the trial court gave credence to the ungrounded allegations, as reflected by the trial court's action on defendant's bond which was increased while defendant was being held on a $15,000 bond.

 In the cause before us, the prosecution did not in any manner attempt to prejudice the trial judge and no such charge is made by defendant. While matters concerning various arrests on which there was no finding of guilty should not be received in evidence at a hearing in aggravation and mitigation, as stated by the courts in People v. Drewniak, 105 Ill App2d 37, 245 NE2d 102 and People v. Bradford, 23 Ill2d 30, 177 NE2d 139, it is

presumed, on a hearing in aggravation and mitigation, that the court will disregard any incompetent evidence when determining the degree of punishment. No reversal or reduction of sentence is justified on the basis of the record relating to such matters in the cause before us. The trial court observed defendant during the trial and heard all of the witnesses and, therefore, was in a better position to determine the degree of punishment than is a court of review as has been stated by many courts of this State (People v. Taylor, 33 Ill2d 417, 211 NE2d 673).

In view of the record, therefore, we do not feel that we would be justified in modifying or reducing the sentence in the instant case. The judgment of the Circuit Court of Will County will, therefore, be affirmed.

Affirmed.

STOUDER, P. J. and RYAN, J., concur.