THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID KNOWLES, Defendant-Appellant.

Fourth District   No. 14900

Opinion filed April 5, 1979.

Craig H. Greenwood and Harold M. Jennings, both of Bloomington, for appellant.

Richard M. Baner, State's Attorney, of Eureka (Robert C. Perry and Marc D. Towler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant, David Knowles, was charged by information on October 17, 1975, filed in the circuit court of Woodford County, with two counts of arson in violation of section 20—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 20—1(a)), arising out of his acts in the early morning hours of October 14, 1975. The defendant was found guilty of both counts following a bench trial held on November 30 through December 1, 1977. On January 31, 1978, he was sentenced to a single term of imprisonment of 2 to 12 years to run concurrently with a previously imposed sentence and with credit for 32 days served.

On October 14, 1975, two fires were ignited resulting in damage to Ford Hall and DeWeese Hall, residence dormitories on the campus of Eureka College. The defendant was charged with arson for both fires. He was convicted by a jury for the offense of fire to personal property in Ford Hall and acquitted of arson to the building. The conviction in that case was affirmed by this court, but the sentence was vacated and the cause remanded for resentencing in a Rule 23 order (*People v. Knowles* (1977), 49 Ill. App. 3d 1131 (order under Supreme Court Rule 23)). The trial court subsequently sentenced the defendant to 4 months' incarceration in the county jail and 3 years' probation.

This appeal is brought following the defendant's conviction for arson to personal and real property—DeWeese Hall. The defendant raises three issues for consideration by this court.

First, he contends that the trial court erred in denying his pretrial motion to suppress evidence of his admissions. This motion was filed, heard, and ruled upon in the trial court as it pertained to the fires in both Ford and DeWeese Halls. We affirmed the trial court's ruling on appeal from the defendant's prior adjudication for the fire in Ford Hall. In this appeal, we adhere to our prior view. Although the defendant argues that his admissions were involuntary and the product of coercion, in our judgment the record does not support his argument.

The defendant further argues that the evidence presented was insufficient to establish that a crime had been committed. There was no evidence that accelerants were used to start the fire, no threats were made, and no one saw the defendant start the fire. However, the testimony of an expert arson investigator was that the fire began under a couch in the lounge area of the dormitory and was of human origin because there was no heating or electrical unit at the point of origin. The investigator did concede that in addition to arson a fire started "accidentally" would be a fire of human origin.

■█ █ Where there is no evidence tending to prove that a crime has been committed other than a defendant's confession, the evidence is insufficient to support the conviction. There must be evidence to show

that the fire was of criminal origin. (*People v. Lueder* (1954), 3 Ill. 2d 487, 121 N.E.2d 743; *People v. Hougas* (1968), 91 Ill. App. 2d 246, 234 N.E.2d 63.) Aside from a confession, however, the corpus delicti need not be proved beyond a reasonable doubt. *People v. Nachowicz* (1930), 340 Ill. 480, 172 N.E. 812.

In *People v. O'Neil* (1960), 18 Ill. 2d 461, 165 N.E.2d 319, a conviction was upheld where the defendant was able to reenact the origin of the fire and where he subsequently attempted to commit suicide. His confession plus these factors established the corpus delicti.

In this case, the defendant admitted that he threw a book of matches on the rug near the couch which subsequently caught fire. The testimony at trial further reveals that shortly thereafter the defendant returned to a group of students and attempted to establish a false alibi by stating that the door to DeWeese Hall had been locked and he was unable to enter. Moreover, the fact that the defendant had started a fire in Ford Hall two hours earlier by setting a chair in the lounge afire established a modus operandi for the second fire.

■■ The expert testimony established that the fire was of human origin, either deliberate or accidental. The defendant's admission, his false alibi, and his modus operandi negate any inference that the fire was an accident. From this evidence, the trier of fact could properly conclude that a crime had, in fact, been committed.

Finally, the defendant asserts that the sentence imposed by the trial court was excessive and it was an abuse of discretion to deny him probation. At the time the offense in this case was committed, the defendant was 18 years old, and a freshman in college, away from home for the first time in his life. He had led an exemplary life and had no prior criminal or behavioral problems. He was raised in a strong family environment, and his family and friends have continued to support him and maintained their concern for him throughout the proceedings in this case.

Prior to sentencing the defendant in this case, the trial judge expressed his concern that the defendant set the fire in DeWeese Hall with the knowledge of the property damage and the personal anxiety which resulted from the fire he started two hours earlier in Ford Hall. This fact should, and does, bear upon the issue of sentence. While this should increase the defendant's awareness of the consequences of his actions, we note that the time frame involved did not afford the defendant the opportunity to fully reflect upon the consequences upon himself nor did it allow society and our correctional system the opportunity to express disapproval of his actions and to provide treatment for his behavior.

The defendant's personal history, his close family ties, and his behavior in the time period after the fire and through his second trial lead

to the inescapable conclusions that a 2- to 12-year sentence of imprisonment is unnecessary to rehabilitate the defendant and his imprisonment is unnecessary to protect society. These two conclusions were recognized by the trial judge in pronouncing judgment. The reason given by the judge in sentencing the defendant was that to grant the defendant probation or conditional discharge would deprecate the seriousness of the defendant's conduct:

> "The Court certainly has considered the full panoply of penalties which the Court has available to it to impose, including not only a sentence to imprisonment but periodic imprisonment as well, the possibility of a fine or conditional discharge or probation, and the Court in going through those not simply to give lip service to them but to indicate that the Court has fully considered whether or not some of those lesser penalties other than imprisonment would be appropriate. The Court has concluded that it would deprecate the seriousness of the crime and that persons who do place other students in danger of their lives that in order to prevent that sort of thing, in other words, to let people know that this is not the type of crime which is simply going to be overlooked or simply punished minimally and that is not appropriate and the Court is not going to go along with that."

We cannot dispute the fact that the defendant's conduct here was indeed very serious, but the statute upon which the trial court relied in denying the defendant's request for probation directs the court to sentence the defendant to a term of imprisonment only if the court is of the opinion that "probation or conditional discharge would deprecate the seriousness of the offender's conduct *and would be inconsistent with the ends of justice.*" (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1(a)(3).) The latter portion of this statute was not intended by the legislature to go unheeded. The statute uses the conjunctive for a purpose.

■■ To sentence this defendant to a term of imprisonment of 2 to 12 years cannot be viewed as consistent with the ends of justice. The theory of punishing one individual to deter other would-be offenders is at best of questionable value and is frequently used as a disguise for retribution and retaliation. "Furthermore, to make an example of an offender so as to discourage others from criminal acts is to make him suffer not for what he has done alone but because of *other* people's tendencies." Menninger, The Crime of Punishment 206 (1968).

When a defendant poses no threat to society and when, as the presentence report indicates here, adequate resources are available in the community to provide any needed rehabilitation, to place a youthful offender in a penitentiary where bitterness and anger breed is not even

tangentially related to the ends of justice. The defendant bears the stigma of being a convicted felon, but to impose upon him the additional disgrace of having to serve a sentence of imprisonment for the sole purpose of deterring others from criminal acts is inconsistent with the ends of justice.

The defendant has continued his college education and is working to help support himself. Now, over three years after the offense was committed, to thwart his efforts by imprisoning him for 2 to 12 years so that others can learn from his mistakes is misguided at least and counterproductive as a long-range remedy.

This court, on appeal, may "reduce the punishment imposed by the trial court" (58 Ill. 2d R. 615(b)(4)) or "reverse, affirm, or modify the judgment or order from which the appeal is taken" (58 Ill. 2d R. 615(b)(1)). Where, as here, the adjudication is one of guilt, the judgment includes the sentence imposed by the trial court (Ill. Rev. Stat. 1977, ch. 38, par. 1005—1—12). Thus, this court has the power, *i.e.*, jurisdiction, to affirm the defendant's conviction and either modify the sentence or reduce the punishment imposed. Clearly, under Supreme Court Rule 615, this court can reduce the sentence imposed to 1 to 3 years' imprisonment, the minimum sentence of imprisonment authorized by statute. Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1(e)(2).

In *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 556, 301 N.E.2d 300, 302, the Illinois Supreme Court held that its Rule 615 "was not intended to grant a court of review the authority to reduce a penitentiary sentence to probation." In *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168, the supreme court again announced its position that although the Unified Code of Corrections recognizes probation as a sentence, Supreme Court Rule 615(b)(4) does not grant a reviewing court the authority to reduce a sentence of imprisonment to a sentence of probation when the sentencing judge superimposes his personal belief in the severity of the crime charged and is predisposed to disregard arguments for probation. In *Bolyard*, the court reversed the defendant's sentence and remanded the cause to the circuit court for resentencing before a judge other than the trial judge, noting that the demeanor of witnesses and their credibility can more properly be considered by the trial court than a court of review.

In *People v. Rege* (1976), 64 Ill. 2d 473, 356 N.E.2d 537, the supreme court reaffirmed its stand in *Bolyard* where the sentencing judge may have been misled as to the severity of the crime charged. The court said, "[I]t is not the function of a reviewing court to reweigh the evidence and substitute its judgment for that of the trial judge on the merits of the question of probation, but rather to determine whether the trial court

failed to exercise discretion or acted in an arbitrary manner in denying probation." 64 Ill. 2d 473, 482-83, 356 N.E.2d 537, 542.

The only evidence presented at the sentencing hearing in this case was the presentence report, testimony of the defendant's father, numerous letters of recommendation, and the court's own records. As cautioned in *Bolyard* and *Rege*, we do not pass upon the credibility of the evidence presented in sentencing, neither do we reweigh the evidence. Here, we take the trial judge at his word when he said:

"I think this kind of case also poses difficulty to the Court in finding an appropriate sentence. It is difficult in the respect that we have a crime of very serious proportions committed by a person who has never been involved in criminal activity before in his life and has not since been involved in criminal activity, and certainly the Court does not regard [letters of recommendation] being mere scraps of paper, they are some of them handwritten, all of them written with a good deal of thought and consideration as to the person about whom they are written and they all indicate a person whose character has been admirable during his growing up years, it indicates considerable efforts on the part of his parents to raise a child who is law abiding, religious and a good citizen, and, in fact, his conduct has been just that but for the occasion of this one evening out here at Eureka College. The results of that evening though are very horrendous."

We conclude that when the trial court has considered the full panoply of penalties available to it and acknowledges that the *only purpose* to be served by imprisoning a defendant is to possibly deter others from similar conduct, the sentence of imprisonment must be further reviewed. As we noted, the sentence must also reflect a knowing quest to be consistent with the ends of justice. We further note that the sentence here was imposed on January 31, 1978. Section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—4.1) now authorizes this court "to modify the sentence * * *, including increasing or decreasing the sentence or entering an alternative sentence to a prison term." That provision clearly reflects a change from the proscription of *Ward*. This new grant of authority to the reviewing court was not effective, however, until one day after the instant sentence was imposed. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b).) Mr. Justice Trapp concurs that the conviction should be affirmed, the sentence vacated, but does not concur in all of the language found in the opinion.

This conviction is affirmed, the sentence is vacated, and this cause is remanded to the circuit court for a new sentencing hearing and for the imposition of sentence.

Conviction affirmed, sentence vacated, cause remanded with directions.

REARDON, P. J., and TRAPP, J., concur.