THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CRAIG LEE COX, *Defendant-Appellant.*—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHARON L. STEVENS, Defendant-Appellant.

Fourth District   Nos. 15389, 15457 cons.

Opinion filed October 12, 1979.

CRAVEN, J., concurring.
GREEN, J., dissenting.

Woollen, Brown, Hawkins & Basola, of Decatur (Gregory A. Mattingley, of counsel), for appellant Craig Lee Cox.

Moody & Diamond, of Decatur, for appellant Sharon L. Stevens.

Patrick M. Walsh, State's Attorney, of Decatur (Marc D. Towler, Larry Wechter, and Karen L. Boyaris, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

This case involves two defendants, separately found and adjudged guilty of distinct crimes and sentenced to terms of imprisonment. In both of these cases, however, the defendant challenges the propriety of the trial court's denial of probation or alternatively argues that the sentence imposed was excessive. In addition to raising this common issue, these appeals also present a broader underlying question concerning the standard by which a sentence should be scrutinized by a reviewing tribunal. Therefore, for purposes of this opinion these appeals have been consolidated.

We diverge from the ultimate task of addressing the individual merits of these cases in the hopes of illuminating the analysis and rationale we have relied on in reaching the decisions herein. We begin our inquiry as to the appropriate standard of appellate review of sentences with an examination of section 5—5—4.1 of the Unified Code of Corrections. (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—4.1.) This section provides that:

"The defendant has the right of appeal in all cases from sentences entered on conviction of murder or any other Class of felony, however, in all such appeals there is a rebuttable presumption that the sentence imposed by the trial judge is proper. The court to which such appeal is properly taken is authorized to modify the sentence and enter any sentence that the trial judge could have entered, * * *." Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—4.1.

Recently, the Fifth District Appellate Court in *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, in examining the legislative background of the amended Code, determined that the intent of the legislature, by this and other provisions, was to expand the scope of appellate review of sentences. It is unquestioned that the legislature intended, by section 5—5—4.1, to overcome the principle announced in *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 301 N.E.2d 300, and followed in *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168, that a reviewing court did not have authority to reduce a sentence of imprisonment to one of probation. (See *Choate*; *People v. Knowles* (1979), 70 Ill. App. 3d 30, 388 N.E.2d 261.) This purpose is made explicit by the language itself and, as noted in *Choate*, was reflected in the subcommittee report which formed the basis for the amendments to the Code. See Report to the Illinois House Judiciary II Committee by the Subcommittee on Adult Corrections (hereinafter cited as Subcommittee Report).

It is much less apparent, however, as to what precisely the legislature

meant by the phrase "rebuttable presumption." Examining the evolution of the new Code, the court in *Choate* concluded that the legislature intended a departure from the old standard of reviewing sentences whereby the appellate court deferred to the discretion of the trial court, absent a showing of abuse of that discretion. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In an extremely well-reasoned and comprehensive fashion Justice Moran detailed the amendments of the Code which the court felt were indicative of such a legislative intent.

Without doubt, the disenchantment with the concept of indeterminate sentencing, with its accompanying emphasis on broad discretionary powers for judges and parole boards, provided, in part, the genesis for the amended Code. The concensus of criticism was aimed at the unexplained and seemingly irrational disparity in sentences for what were essentially like offenses. Although such disparity was certainly contemplated and necessarily embodied in the theory of indeterminate sentencing, the goal of tailoring the punishment to the individual offender was hindered by the apparent incongruity and injustice of the results. (See generally Subcommittee Report; McKay, *It's Time to Rehabilitate the Sentencing Process*, 60 Judicature 223 (1976); Kennedy, *Criminal Sentencing: A Game of Chance*, 60 Judicature 209 (1976).) The appearance, and oftentimes the fact, of such inequities served to breed contempt and disrespect for the criminal justice system, not merely in the eyes of cellmates, but in the mind of the public as well. Thus, determinate sentencing served to temper the discretionary authority of the sentencing judge and to create greater certainty with respect to the punishment applicable to individual crimes.

It would not necessarily follow, however, from the reduction of judicial discretion at the sentencing stage that there should be a corresponding increase in the authority of reviewing courts to scrutinize the discretion retained by sentencing judges. Nevertheless, the legislative aim to eliminate unwarranted disparity in sentencing is specifically expressed in various provisions of the Code. (See, *e.g.*, Ill. Rev. Stat. 1978 Supp., ch. 38, pars. 1005—5—4.2, 4.3. (The former section grants the supreme court power to prescribe rules of practice and review which will promote uniformity and parity of sentences. The latter provision requires the Department of Corrections to publish statistical sentencing data for trial and appellate judges' use in imposing and reviewing sentences.) See also Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—10—2(5).) As argued in *Choate*, increased appellate scrutiny is integral to the achievement of that end for "[i]f appellate courts continued to defer to the discretion of trial courts whenever a sentence was within the statutory range without regard to whether or not it was appropriate under all the facts and

circumstances, then the purpose of the new law would be defeated." 71 Ill. App. 3d 267, 273, 389 N.E.2d 670, 675.

We are most persuaded, however, that a broader standard of review was intended by reason of the legislature's elaborate and detailed specification of sentencing criteria and requisites. In the Subcommittee Report to the Judiciary II Committee, it was observed that the "power to reduce sentence [Supreme Court Rule 615] is rarely used because in most cases the trial court had not communicated on the record the basis of its sentencing decision. Without such information, the appeals court will generally not change the judgment of the trial judge, on the assumption that he had an adequate basis for its [sic] decision." (Subcommittee Report, at 11.) The underlying rationale for the abuse of discretion standard can be explained in part by the combined effect of the lack of clearly delineated sentencing guidelines and the frequent absence in the record of the court's justification for a particular sentence. Under such circumstances an appellate court would be left to speculate as to the judge's rationale. Thus, given such a clouded perspective, a reviewing court's deferral to the trial court's judgment had a firm pragmatic basis.

The new Code, however, as detailed in *Choate*, has attempted to eliminate the ambiguity of the sentencing process. For example, we proceed from the assumption that, unless otherwise provided in the Code, probation is the appropriate sentence absent specific conditions. (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—6—1.) The required contents of the presentence report have been expanded. (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—3—2.) The Code enumerates specific, objective criteria (factors in aggravation and mitigation) which are to be considered in imposing or withholding various forms of punishment. (Ill. Rev. Stat. 1978 Supp., ch. 38, pars. 1005—5—3.1, 1005—5—3.2, 1005—8—2.) Finally, in sentencing offenders for felony convictions the judge is required to set forth on the record his reasons for his sentencing determination. Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—4—1.

Where more detail and completeness is contained in the findings of the trial court, the process of reviewing and detecting sentencing error becomes more defined and certain. The examination of sentences, therefore, is less dependent upon speculation concerning the judge's subjective reasoning and there is, consequently, a diminished need to automatically defer to his judgment. Having taken this somewhat protracted path, we find ourselves in agreement with the ultimate conclusion reached in *Choate* that, by these amendments, the legislature intended a more comprehensive review of sentences by appellate courts.

Having agreed that a broader standard is contemplated by the Code, we are still left with the task of defining the boundaries thereof. In the

appellate process, resort to presumptions in reviewing decisions is not uncommon. For example, in reviewing the finding of a judge sitting as the trier of fact it is *presumed* that the judge considered only competent evidence. (*E.g., People v. Gilbert* (1977), 68 Ill. 2d 252, 369 N.E.2d 849.) This presumption is overcome only where the record affirmatively shows that the court in fact relied upon improper evidence. Likewise, an appellate court will presume that a court, in determining the appropriate sentence for an offender, disregarded any incompetent evidence brought before it. Similarly, if there is no affirmative demonstration that the judge's decision was influenced by such evidence, it will not be disturbed. (*People v. Robinson* (1969). 116 Ill. App. 2d 323, 253 N.E.2d 570; *People v. Sawyer* (1971), 1 Ill. App. 3d 1096, 275 N.E.2d 771.) Earlier cases even referred to a presumption that a court had not abused its discretion in sentencing a defendant. (See *People v. Syer* (1948), 400 Ill. 444, 81 N.E.2d 186.) The standard of such appellate presumptions directs the reviewing court to indulge in every reasonable intendment favorable to a ruling of the court below and, in the absence of an affirmative showing to the contrary, to presume that the ruling of the court was properly made and for sound reasons. 5 Am. Jur. 2d *Appeal and Error* §704 (1962); 24A C.J.S. *Criminal Law* §1858 (1962).

■■ ■ What then is the quantum of evidence which must be brought to our attention to constitute an affirmative showing that the trial judge's sentence was erroneous? Certainly error will be demonstrated if it is clear from the trial court's statements and findings that the wrong standard was applied or that inappropriate circumstances were considered in either aggravation or mitigation. (*Cf. People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265; *Sawyer.*) On the other hand, "[t]he mere fact that the trial judge cites compliance with the statutory criteria is not a guarantee against sentencing error. He may merely apply the factors in a mechanical fashion * * *." (*Choate*, 71 Ill. App. 3d 267, 273, 389 N.E.2d 670, 675.) In examining a defendant's claim of error, we are not bound by the appearance of regularity. Finally, although a judge may not have acted arbitrarily or capriciously in denying probation or in imposing a particular sentence, we do not believe for that reason alone, a sentence should necessarily be immune from modification. A sentence while not capricious may, nevertheless, be unjustifiably disparate. We believe the new Code authorizes us to correct such an error.

We certainly do not find in the Code, however, the conferral of authority upon appellate courts to modify a sentence merely because in their opinion a different sentence would have been more appropriate. In reviewing sentences, we must remain cognizant of our own biases. As the supreme court recently stated in another context:

"Every human is, consciously or subconsciously, partial to some

degree in that he is influenced by the habits he has been trained in, the experiences he has had, occupationally or otherwise, the people with whom he associates, the area in which he lives and the innumerable unrecognized factors which subconsciously affect every individual's philosophy." *People v. Vance* (1979), 76 Ill. 2d 171, 179, 390 N.E.2d 867, 870.

Appellate justices do not possess a unique or exclusive insight into justice. Thus, the error which warrants modification of a sentence must amount to more than a difference of opinion or individual sentencing philosophy. The sentencing objectives are spelled out in the Code. It is deviation from those objectives, in view of the standards and criteria therein set forth, which constitutes error. To hold otherwise would allow for ad hoc, instinctive decisions on appeal which could result in merely perpetuating disparity on a different level and which would certainly thwart the development of defined, objective standards. Finally, we draw our sights on the commentary to section 3.1 of the American Bar Association's Standards, Appellate Review of Sentences (Approved Draft 1968) wherein reference is made to the English approach to sentencing review. It is stated therein that a court should:

" '* * * not simply to substitute its notion of the appropriate sentence for that of the trial judge. The Court * * * will not "tinker" with sentences. * * *. "It is only when a sentence appears to err in principle that the Court will alter it. If a sentence is excessive or inadequate to such an extent as to satisfy this Court that when it was passed there was a failure to apply the right principles, then this Court will intervene." ' " (ABA Standards, Appellate Review of Sentences §3.1, at 49 (Approved Draft 1968).)

Perhaps this most succinctly defines our task.

### *Defendant Craig Lee Cox*

Defendant was charged, on June 12, 1978, with the offense of reckless homicide. (Ill. Rev. Stat. 1977, ch. 38, par. 9—3.) Following a bench trial on stipulated facts, defendant was found guilty and sentenced to a 2-year term of imprisonment.

Briefly, the stipulated facts introduced at defendant's trial were as follows. On June 9, 1978, defendant was operating a motor vehicle in the parking lot of the "Great Skate" skating rink in Decatur, Illinois. Two witnesses observed the defendant's vehicle "fishtailing" while proceeding at a speed of 25 to 30 miles per hour in the parking lot. Defendant's automobile struck another vehicle in the lot, caromed off the car, jumped a curb, and struck a group of children, one of whom was 13-year-old Sharon Uttinger. Uttinger died as a result of head injuries received from

this *accident*. It was further stipulated that defendant admitted driving *the* automobile involved and that, in his words, he was "driving in a stupid way."

At defendant's sentencing hearing, the court examined the presentence report and noted that the investigating officer recommended against a sentence of probation. Defense counsel moved to correct the report to reflect the fact that defendant, who was not working at the time the report was prepared, was presently employed. Defendant, at the time of sentencing, was 19 years old and did not have a past record either as an adult or a juvenile.

At the sentencing hearing, the State called Officer John Mickler, of the Decatur Police Department. He testified that 12 other persons, in addition to Uttinger, had received some injuries as a result of the incident. He also testified that the automobile did not immediately come to a stop after the collision but proceeded out of the parking lot until it came to rest against a utility pole.

Sharon Collins and Larry DeLong, special educators who were acquainted with the defendant from his schooling at Eisenhower High School in Decatur, testified on behalf of the defendant. Defendant had been classified as an educable mentally handicapped student. These students generally have I.Q.'s ranging from 55 to 80. Defendant functioned academically at between a first and third grade level, but he functioned socially at a much higher level. DeLong observed that the defendant was aware of and at times frustrated by his mental limitations and recommended that defendant be placed on probation although he acknowledged that defendant was at times emotionally unstable and that this instability could be aggravated by alcohol consumption.

The defendant's brother, Mark Cox, and his mother, Shirley Cox, testified on behalf of the defendant. Defendant lived at home with his mother and two brothers and would continue to reside there if released on probation. Defendant's father had died approximately a year and a half prior to the hearing. The two witnesses testified that defendant had a driver's license about 2 years and had prior to the accident always driven sensibly. Defendant, who had begun working as a laborer for a construction company, turned the money he earned over to his mother and she then gave him expense money out of that sum. According to Mark Cox, threatening phone calls had been directed to defendant and to the Cox residence since the time of the accident. The defendant was extremely upset and remorseful about the accident. Both defendant's mother and brother indicated that they were prepared to see that the defendant complied with the terms of probation if granted, although Mark Cox admitted that he worked nights and was not home much of the time.

Billy Ray Dickerson, who had one previous felony conviction, testified on behalf of defendant. Dickerson was employed as a foreman for McNeely Builders where defendant was employed as a laborer. Defendant had been employed approximately a month and a half prior to the hearing, working generally between 7 a.m. and 5 p.m. on the average of 6 days a week. According to Dickerson, defendant got along well with his co-workers, was punctual, and had a good attendance record. He stated that defendant would be able to continue working with McNeely Builders if granted probation. On cross-examination, Dickerson admitted that a couple of weeks before the hearing the defendant had accompanied him and other coworkers to a tavern after work where defendant consumed one or two beers. Defendant left the tavern when he was informed that someone had threatened him. Dickerson asserted that defendant did not drive to work during the time he had been employed.

Joe Rickleman, a school psychologist for the Progress Resources Center in Decatur, conducted a psychological examination of the defendant. In his opinion, defendant could be classified as borderline mentally retarded. Rickleman discussed certain proposed recommendations with respect to the defendant. He believed that, as terms of probation, defendant should be placed in a vocational and educational development program. He also felt that defendant should be referred to the Decatur Mental Health Center for counseling. He believed the defendant's vocational goals were somewhat unrealistic in light of his handicap and that this counseling would help the defendant develop a greater self-awareness and more realistic goals. Rickleman stated that the Progress Resources Center would be available to coordinate such a program and would provide a caseworker to monitor the defendant's participation and development in the various programs. The court questioned Rickleman concerning his observation that the defendant scored weakly on tests designed to measure his judgment and tolerance. Rickleman acknowledged that the defendant's emotional instability could be aggravated by his use of alcohol.

Finally, defendant testified on his own behalf at the hearing. Defendant stated that he was very sorry about the accident. He admitted that on the night in question he had purchased a quantity of beer, although he knew this purchase was illegal because of his age at the time. He testified that he had only consumed two beers prior to the accident although the presentence report indicated that he admitted drinking five beers prior to the incident. The defendant also testified concerning a letter he received, purporting to be from an inmate of the Vandalia Correctional Center. The writer referred to the accident at the skating rink and threatened defendant with physical harm if he were sentenced to Vandalia. Finally, defendant admitted that he had on occasion driven an

automobile following the accident, but his license had not yet been revoked as of the time of the hearing.

Having heard the arguments of counsel, the court referred to the new sentencing act and the list of statutory criteria to be considered by the court in imposing sentence. (Ill. Rev. Stat. 1978 Supp., ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) Without detailing which factors it found applicable or relevant, the court stated, "I have considered those [factors in mitigation and aggravation] in trying to arrive at what is an appropriate sentence." The court proceeded and further reasoned that in its opinion there were three principal elements surrounding the offense.

"The first is a matter of liquor, the second is a matter of emotional instability and the third is the misuse of an automobile. And using those three elements we approach it, what could be done to prevent those circumstances we are hearing again and the same damage being done. It would appear as to this offender that if those elements appear again, it is a great likelihood that a similar occurrance [sic] may happen, so that really we have as far as the offense a great risk to society. Society shouldn't be subjected to a risk that somebody else may be killed or others injured or such an occurrance [sic] could happen.

\* \* \*

We can't correct his mental capacity, we can't keep him under constant supervision from now on. I am sure that the program suggested has just as much merit, but it also has terminal facilities, too. It may be effective for a short time but it can't be a matter from now to hereafter.

I am of the opinion that when I consider the offense, and when I consider the offender, and again from a charitable standpoint, that probation is not the appropriate sentence. It is not appropriate from the standpoint of risk of society, it is not appropriate from the standpoint of whether or not it will successfully correct the problem we are dealing with. I think it might work during the period of the program, if he under goes [sic] the mental health or so forth, but I do not think it would continue."

As we discussed above, the new sentencing act provides:

"[T]he court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstances of the offense, and to the history, character and condition of the offender, the court is of the opinion that:

(1) his imprisonment or periodic imprisonment is necessary for the protection of the public: or

(2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent

with the ends of justice." Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—6—1.

In denying defendant probation, the court specifically found in compliance with section 5—6—1 that imprisonment of the defendant was necessary for the protection of the public. As we stated above, however, we are not bound by the trial judge's mere recitation of particular findings. If the record in fact points to an opposite result, the sentence cannot stand.

We perceive a basic, although somewhat latent, flaw in the logic upon which the court based its conclusion that defendant posed a risk to the public. The court described the three elements which it believed led to the offense. It reasoned that a significant danger existed that the public might be exposed to similar reckless conduct where the defendant's lack of judgment was again combined with his use of alcohol and an automobile. The court remarked that nothing could be done to remedy the defendant's lack of judgment, and, therefore, imprisonment was necessary to protect the public. Removal of the defendant from society certainly eliminates the risk that he could combine alcohol and driving in a manner endangering public safety. We do not believe, however, that imprisonment is necessary to attain this end. We take judicial notice of section 6—205(a)(1) of the Illinois Vehicle Code which provides for mandatory revocation of the driver's license of any person convicted of reckless homicide. (Ill. Rev. Stat. 1977, ch. 95½, par. 6—205(a)(1).) Using the court's own logic, removing this element from the formula necessarily minimizes the risk to society of the recurrence of such a crime.

It affirmatively appears that the court's rationale for denying probation was to this extent erroneous. Nevertheless, we must yield to all reasonable inferences from the record which would otherwise support the court's choice of sentence. Even doing so, however, the record fails to support the judge's imposition of a two-year sentence of imprisonment. Reviewing the record in light of the factors in mitigation and aggravation which the court is directed to consider, and which the judge stated he had considered, we conclude a sentence of probation is warranted.

It is initially apparent that the court considered in aggravation that the defendant's conduct resulted in the loss of life. Focus on this element was unquestionably appropriate and specifically contemplated by the Code as an aggravating circumstance. Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.2(a)(1).

The record evidences, however, a number of mitigating circumstances which counterbalance the effect of this serious, but isolated aggravating element. It is clear from the evidence and testimony and implicit from the nature of the offense that the defendant neither intended nor contemplated that his conduct would cause serious physical harm to

another (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.1(a)(2)). The defendant had no history of prior delinquency or criminal activity (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.1(a)(7)). The evidence with respect to whether the offense was the result of circumstances unlikely to recur, although somewhat conflicting, on balance weighs in favor of the defendant. His deficiency in judgment and the apparent effect of moderate quantities of alcohol to further impair that judgment are indicative of defendant's potential to engage in less than rational conduct. Nevertheless, the revocation of defendant's driver's license effectively obviates the third integral element of the offense, the misuse of an automobile.

The Code further directs a court to weigh as a factor in mitigation whether defendant has demonstrated the character and attitude which indicate that he is unlikely to commit another crime. (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.1(a)(9).) In view of the isolated character of this offense, the defendant's mental retardation, his expressed remorsefulness over the consequences of his conduct, and his past record of behavior, there is nothing to suggest the likelihood of chronic criminal behavior by defendant.

Finally, we find in this record evidence that the defendant is particularly likely to comply with the terms or conditions of probation. (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—3.1(a)(10).) In so concluding, we find significant, not merely the defendant's apparent willingness to cooperate, but also the trial judge's own remarks concerning the proposed program of probation. He admitted he was in favor of the program and conceded that it could be effective. He expressed reservations, however, about the viability of probation in terms of permanently correcting the defendant's behavior in view of his mental and emotional deficiencies. Admittedly, probation will never provide the means to indefinitely monitor or control an offender's conduct, but neither will a two-year sentence of imprisonment.

Lastly, with respect to defendant's proclivity to comply with the terms of probation, consideration should be given his family environment. Because of his mental impairment, the influence of his family could play an important role in his successful completion of a sentence of probation. The court was informed that defendant would continue to reside with his mother and brothers if released. Although defendant was 19 at the time, it was apparent that his mother was able to exert a degree of control and influence over him as evidenced by her management of his income. Both his mother and brother represented to the court their willingness to aid and supervise the defendant. The court in effect recognized their good faith and their ability to fulfill such supervisory tasks. The court in granting defendant's request for stay of

mittimus for 25 days (over the Christmas season), releasing him to the custody of his family, remarked that it felt his family was sufficiently responsible to supervise his conduct.

■■ It is clear from the foregoing that the trial court erred in concluding that imprisonment was necessary for the protection of society. That finding does not stand up under the court's own analysis of the risk and is not otherwise supported by the record, and is in fact contradicted by various evaluations of the evidence made by the court. We have not overlooked the court's intimations that it felt the offense warranted some form of punishment. These statements appear to represent the judge's concern for societal retribution or atonement for this offense. This concern, to the extent it was a manifestation of the judge's unspoken attitude that a sentence other than imprisonment would deprecate the seriousness of the crime, would not have been totally inappropriate. (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—6—1(a)(2).) As we noted in *People v. Knowles* (1979), 70 Ill. App. 3d 30, 388 N.E.2d 261, however, to deny probation upon this basis requires the court to make the additional determination that probation "would be inconsistent with the ends of justice." (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—6—1(a)(2).) We reaffirm what we expressed in *Knowles* that "[w]hen a defendant poses no threat to society and when, * * *, adequate resources are available in the community to provide any needed rehabilitation, to place a youthful offender in a penitentiary where bitterness and anger breed is not even tangentially related to the ends of justice." 70 Ill. App. 3d 30, 33-34, 388 N.E.2d 261, 264.

For the foregoing reasons, we hereby reduce defendant's sentence to probation for a period of 30 months, with a term of 3-months imprisonment as a condition thereof pursuant to sections 5—6—2(b) and 5—6—3(d). (Ill. Rev. Stat. 1978 Supp., ch. 38, pars. 1005—6—2(b)(2), 1005—6—3(d).) This cause is further remanded to the circuit court for imposition of additional conditions of probation in accordance with the proposed program of vocational and educational training and mental health counseling as set forth in the record and with such other terms or restrictions as the court shall find to be warranted.

### Defendant Sharon L. Stevens

Defendant was charged by information with possession of less than 30 grams of a controlled substance (phendimetrazine), in violation of section 402 of the Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1402), and with deceptive practices in violation of section 17—1 of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 17—1), it being alleged that she issued a check in the amount of $28.75 knowing that it would not be paid by the depositor.

Defendant, thereafter, entered a plea of guilty to the possession of the controlled substances charge pursuant to a plea agreement whereby the deceptive practice charge was dismissed. The State agreed to concur in a request for probation unless the presentence report was unfavorable. The State presented the factual basis for defendant's plea, noting that when she was arrested on the deceptive practices charge, she had in her possession two or three pills, subsequently "determined to be Phendrimetrazine, diet pills." The court found the factual basis sufficient and accepted defendant's plea.

At the sentencing hearing, held on February 16, 1979, the State's Attorney concurred in the recommendation against probation found in the presentence report. The record of defendant's previous arrests demonstrated that she was sentenced in 1974 to one year probation for a conviction of burglary. The State presented no evidence in aggravation.

As evidence in mitigation defendant testified that she was 36 years old, married, and pregnant. Her baby was due in August 1979. She had two children living with her and her husband and three children by a previous marriage who lived with their father. The defendant's husband, a retired serviceman, was seeing a psychiatrist because of his nerves. The defendant had also been receiving some counseling.

Concerning the offense to which she pleaded guilty, defendant testified that a friend had given her the pills. She took the pills to give her energy and that over the past 4 or 5 years she had occasionally taken these pills when she could get them from a friend. She claimed that she had stopped taking the pills since the offense. Finally, concerning her previous conviction of burglary, she explained that she was involved in the crime with another woman, whom defendant claimed was the one who actually committed the offense.

At the conclusion of direct and cross-examination, the court questioned the defendant about her use of the diet pills. He noted that because she was so thin, they could not have been taken for the purpose of losing weight. Defendant repeated that she occasionally took the pills to give her energy.

Defense counsel, in requesting a sentence of probation, argued that defendant did not pose any kind of danger to the community and had not been in trouble, with the exception of minor traffic offenses, for 5 years. The State's Attorney conceded that defendant did not present any threat to the community but recommended the minimum sentence of imprisonment.

The trial court adopted the recommendation of the State, denied defendant's request for probation and sentenced her to 2 years' imprisonment. In setting the sentence, the court stated, "if she hadn't had probation she would get probation for this offense within two seconds, no

problem, no great consideration. But I can't ignore that she has had probation and not on a trivial matter * * *." The court found the recommendation of the presentence report against probation was sound "and probably what is required in this case."

Defendant contends that the record demonstrated that she was a proper candidate for probation and that the court erred in denying this disposition on the ground that she had previously been placed on probation. We agree.

As we have noted throughout this opinion, the new sentencing act provides that probation is an appropriate sentence absent a determination by the court that imprisonment is necessary to protect the public or that a sentence of probation would deprecate the seriousness of the offense. Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—6—1.

■■ There is nothing in the record which indicates that imprisonment was necessary to protect the public. The State conceded that the defendant did not pose any particular threat to society. There is similarly nothing in the record to indicate that the trial judge felt she was a risk to society.

Alternatively, there was no specific finding by the court that probation would deprecate the seriousness of the offense. This may, however, have been the unspoken reasoning of the court inasmuch as it appeared to deny probation solely on the basis that defendant had previously been placed on probation. Nevertheless, if this was in fact the logic of the court, it is undermined by the court's own characterization of the offense as one which would generally warrant probation.

Finally, although the defendant's previous conviction and sentence could be considered a factor favoring a sentence of imprisonment (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.2(a)(3)) there were a number of circumstances which weighed against such a disposition. For instance, although defendant did have a prior criminal record (the one burglary offense), she had successfully completed her term of probation. In view of that fact, and by her representations to the court, it would appear likely that she would comply with the conditions of a period of probation. (See Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.1(a)(9).) In addition, with the exception of three minor traffic offenses, the defendant had "led a law-abiding life for a substantial period of time [5 years] before the commission of the present crime." (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.1(a)(7).) Furthermore, her conduct neither caused nor threatened physical harm to another. (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.1(a)(1).) Finally, we believe the record indicates that the imprisonment of this defendant, a 36-year-old pregnant woman with two children residing with her and her present husband, "would entail excessive hardship to [her] dependents." (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.1(11).) The sole fact that a defendant

has previously been placed on probation is simply not a criterion upon which the denial of probation can be based. The circumstances militating against the statutory preference of probation (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—6—1) are not evidenced in the present record.

Defendant has affirmatively established that the sentence imposed was erroneous. Accordingly, we direct and order that defendant's sentence be reduced to a term of probation of 2 years, with such terms and conditions, excluding incarceration, as the trial court shall determine to be appropriate.

In accordance with the foregoing, the sentence in cause Gen. No. 15389 is reduced and the matter remanded to the circuit court. In Gen. No. 15457, sentence is also reduced and the cause remanded.

Gen. No. 15389—Sentence reduced and cause remanded with directions.

Gen. No. 15457—Sentence reduced and cause remanded.

Mr. JUSTICE CRAVEN, concurring:

I concur in the thorough analysis of sentence review found in the opinion of Mr. Justice Reardon. I write to indicate that concurrence and to express the view that his opinion fashions a very helpful analysis and gives meaningful effect to the clear legislative intention for review of sentence.

In the difficult area of imposition and review of sentence, we have now, by this opinion, arrived at a reasonable and defensible balance. It is unfortunate that the degree of judicial discretion in sentencing has been consistently narrowed, but then even a casual inquiry would show great disparity and unfortunately an increase in the disparity as discretion is increased. In any event, the legislature has now quite appropriately spoken upon the issue of sentencing and appellate review of sentencing. The result reached here is clearly required by the facts, the circumstances, the rules, and the statutory amendments.

Mr. JUSTICE GREEN, dissenting:

The rule is firmly established that we have a responsibility to determine *sua sponte* whether we have jurisdiction to hear a case. (*Clark v. State Police Merit Board* (1972), 5 Ill. App. 3d 332, 282 N.E.2d 220.) Logic requires that we also determine *sua sponte* whether we have jurisdiction to make the disposition proposed. Here, the majority proposes to reduce the sentences to probation. Although I agree with much that is said in the comprehensive and scholarly majority opinion's analysis of the legislature's intent in enacting section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1978 Supp., ch. 38, par.

1005—5—4.1), the precedent of *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495, persuades me that the legislature did not have the power to authorize us to reduce sentences to probation.

*Stamos* concerned the validity of legislation providing that stays pending appeal from sentences of imprisonment for forcible felonies could be obtained only from the reviewing court (Ill. Rev. Stat. 1967, ch. 38, par. 121—6(b)). The supreme court explained that sections 2, 5, and 7 of the Judicial Article of 1962 (Ill. Const. 1870, art. VI (1964), §§2, 5 and 7) "placed responsibility for rules governing appeal in the Supreme Court, and not in the General Assembly." (40 Ill. 2d 62, 66, 237 N.E.2d 495, 498.) The court noted that the legislation was in conflict with Supreme Court Rule 609(b) (36 Ill. 2d R. 609(b)) which then, as now, permitted either the trial or reviewing court to stay sentences pending appeal, even those where imprisonment was imposed for forcible felonies.

Supreme Court Rule 615(b) (58 Ill. 2d R. 615(b)) sets forth the powers of the reviewing court in criminal cases and authorizes such court to, among other things, "reduce the punishment imposed by the trial court." In *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168, the supreme court, following *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 301 N.E.2d 300, held that Rule 615(b) did not permit a reviewing court to reduce a sentence of imprisonment to one of probation even though probation was then, as now, a sentence (Ill. Rev. Stat. 1973, ch. 38, par. 1005—5—3(d)). Section 5—5—4.1 of the Unified Code of Corrections is thus in conflict with Rule 615(b). The provisions of sections 2, 5, and 7 of the Judicial Article of 1962 referred to in *Stamos* have been incorporated in sections 4, 6 and 16 of article VI of the Illinois Constitution of 1970. Here, as in *Stamos*, the General Assembly has purported to enact legislation "governing appeal" and here, as there, the legislation is in conflict with a Supreme Court Rule.

The instant situation differs materially from that in *Struckoff v. Struckoff* (1979), 76 Ill. 2d 53, 389 N.E.2d 1170, where the supreme court held to be valid section 403(e) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)) requiring bifurcated hearings in contested dissolution cases. There, the legislation concerned trial and not appellate proceedings and was not in conflict with any Supreme Court Rule. Unlike the constitutional provisions in regard to the supreme court's power to make rules concerning appeals (see Bonaguro, *The Supreme Court's Exclusive Rulemaking Authority*, 67 Ill. B.J. 408 (1979); Fins, *Impropriety of Illinois Legislature's Infringement upon the Constitutional Rule-Making Authority of the Supreme Court*, 66 Ill. B.J. 384 (1978)), neither the Constitution of 1870 nor the present one have ever contained any express grant to the supreme court to make rules governing

procedure in the trial court except to the extent that it has such power by virtue of its administrative and supervisory powers. See *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602.

I can only conclude that the portion of section 5—5—4.1 of the Unified Code of Corrections purporting to authorize us to reduce sentences of imprisonment to probation is invalid and that we have no jurisdiction to do so. I must dissent, therefore, from the portion of any judgment which does so.

As the balance of section 5—5—4.1 does not concern the jurisdiction of the court, I do not *sua sponte* raise any question of its validity.

Although I wrote the opinion in *People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 381 N.E.2d 415, where we applied the rule of *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, in determining whether a sentence should be set aside, I am now persuaded by the majority that the General Assembly intended a broader standard of review of sentence than *Perruquet* would indicate. Nevertheless, I consider the phrase "rebuttable presumption that the sentence imposed by the trial judge is proper" to indicate a continued intention that considerable deference be given to the trial judge's determination.

I feel that the majority violates their own well-expressed principles of review of sentence in altering the sentence given defendant Craig Lee Cox by simply "substituting its notion of the appropriate sentence for that of the trial judge."

The majority correctly sets forth a number of mitigating factors. However, it considers the evidence as to whether the offense was the result of circumstances likely to recur conflicting but "on balance" weighing "in favor of the defendant." The balancing of conflicting evidence at sentencing should be left primarily to the trial judge and we should defer to that determination unless it is clearly out of line. More specifically, the majority assumes that revocation of defendant Cox's driver's license will assure that he will not engage in further reckless drunken driving. Experience indicates that such revocations are difficult to enforce over a period of time. While it is true that the public would only be protected from defendant's driving during the short period of his imprisonment, this is true in all cases of short imprisonment.

At time of sentencing many, if not most, defendants indicate a willingness to cooperate if placed on probation and a remorse for their offense. The weight to be given to such expressions is peculiarly a matter for the trial judge.

The provisions of section 5—6—1(a)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—6—1(a)(2)) permitting imposition of a sentence more severe than probation or conditional discharge if those sentences "would deprecate the seriousness

of the offender's conduct and would be inconsistent with the ends of justice" is not precise. The majority, having determined that defendant could be rehabilitated by use of local resources, conclude that probation here would not be inconsistent with "the ends of justice." As I do not agree that the trial court's determination of Cox's being a threat was improper, I need not decide whether I am in complete agreement with the statement quoted from *People v. Knowles* (1979), 70 Ill. App. 3d 30, 388 N.E.2d 261, in order to conclude that the trial judge here was not precluded from determining that a grant of probation would have been "inconsistent with the ends of justice."

The majority notes that the "appearance and oftentimes the fact" of "inequities" arising from disparate sentences have tended "to breed contempt and disrespect for the criminal justice system" in the eyes of both convicts and the public. No indication has been shown of a legislative intent to lessen disparity of sentences by equating all sentences to those that would be imposed by the most lenient trial courts or approved by the most lenient courts of review. Accordingly, a sentencing judge may consider whether his disposition is so lenient as to make the sentence disparately low in comparison to other sentences likely to be imposed by other judges for conduct and circumstances that would appear to the public to be similar to the case before the judge. The provisions of section 5—6—1(a)(2) concerning deprecation of the seriousness of the defendant's conduct and consistency with the ends of justice would appear to speak to this situation. Here, the defendant's conduct was grossly reckless and it caused great damage. In indicating that punishment was required, the trial judge was likely speaking to the necessity of imposing a sentence that would be perceived as fair.

The trial judge also indicated that he was considering the deterrent effect of the sentence. Section 5—5—3.2(a) of the Code (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1005—5—3.2(a)) lists as a factor to be accorded weight in determining whether to impose imprisonment the following: "(7) the sentence is necessary to deter others from committing the same crime." I interpret the foregoing to indicate that deterrence is a proper consideration under section 5—6—1(a)(2).

In ordering the Cox sentence to be reduced to probation subject to 3 months' imprisonment, the majority recognized the need for some imprisonment. The difference between a sentence which includes 30 days' imprisonment and one of 2 years' where the defendant will be released in 1 year upon good behavior is somewhat a matter of degree. The action of the majority thus approaches a "tinkering" with the sentence. In any event I do not deem the presumption of the propriety of the sentence to have been rebutted. I would affirm that sentence.

I agree with much that is said concerning the sentence of Sharon L.

Stevens and would set it aside and remand for new sentencing. My only disagreement with the proposal of the majority is that, as I have explained, I do not think we have the power to reduce the sentence to probation.