(No. 52793.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CRAIG LEE COX *et al.*, Appellees.

*Opinion filed October 17, 1980.*

William J. Scott, Attorney General, of Springfield, and Patrick Walsh, State's Attorney, of Decatur (Donald B. Mackay and Melbourne Noel, Assistant Attorneys General, of Chicago, and Gary J. Anderson and Larry Wechter, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Woollen, Brown, Hawkins & Basola, of Decatur (Gregory A. Mattingley, of counsel), for appellee Craig Cox.

Moody & Diamond, of Decatur, for appellee Sharon Stevens.

Theodore A. Gottfried, State Appellate Defender (Robert E. Davison and David Bergschneider, Assistant Appellate Defenders, of Springfield, of counsel), *amicus curiae*.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Myra J. Brown, Assistant State's Attorneys, and Michele A. Grimaldi and Barry A. Gross, law students, of counsel), *amicus curiae*.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant Craig Lee Cox was charged with the offense of reckless homicide (Ill. Rev. Stat. 1977, ch. 38, par. 9—3). Following a bench trial on stipulated facts, defendant Cox was convicted and sentenced to a two-year term of imprisonment. Defendant Sharon L. Stevens was charged with the offense of possession of less than 30 grams of a controlled substance (Ill. Rev. Stat. 1977,

ch. 56½, par. 1402(b)), phendimetrazine, and with the offense of deceptive practices (Ill. Rev. Stat. 1977, ch. 38, par. 17—1), it being alleged that she issued a check in the amount of $28.75 with knowledge that it would not be paid by the depository. Defendant Stevens entered a plea of guilty to the charge of possession of a controlled substance pursuant to a plea agreement in which the deceptive practice charge was dismissed, and she was sentenced to a two-year term of imprisonment. All proceedings took place in the circuit court of Macon County. These cases were then consolidated on appeal in the appellate court. (77 Ill. App. 3d 59.) The appellate court reduced the sentence of defendant Cox to a period of 30 months' probation, with a term of three months' imprisonment as a condition thereof, and remanded the cause to the circuit court for the imposition of additional conditions of probation. In the case of defendant Stevens, the appellate court reduced her sentence to a two-year period of probation and remanded the cause to the circuit court for the imposition of additional conditions of probation, excluding imprisonment. We allowed the State's petition for leave to appeal.

The primary issue raised by these consolidated cases is the constitutionality of section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1), which purports to alter the standard of review of a sentence imposed by a trial judge and authorizes a court of review to enter any sentence that the trial judge could have entered. The section provides:

> "Appeal—Modification of Sentence. The defendant has the right of appeal in all cases from sentences entered on conviction of murder or any other Class of felony, however, in all such appeals there is a rebuttable presumption that the sentence imposed by the trial judge is proper. The court to which such appeal is properly taken is authorized to modify the sentence and enter any sentence that the trial judge could have entered, including increasing or

decreasing the sentence or entering an alternative sentence to a prison term. However, the appellate court may increase a sentence only in instances where a defendant has filed a notice of appeal and raises the issue of the sentence on appeal." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1.)

The appellate court held that this provision expanded the scope of review of sentences beyond the abuse-of-discretion standard announced in *People v. Perruquet* (1977), 68 Ill. 2d 149, substituting as the criteria a rebuttable presumption that the sentence was proper, and authorized a court of review to reduce a sentence of imprisonment to one of probation, contrary to our decision in *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552. The appellate court found support for this construction in the 1978 amendments to the Unified Code of Corrections. The court noted that these amendments prescribed the inclusion of additional information in the presentence report (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—2), enumerated objective factors in aggravation and mitigation to be considered in imposing a sentence (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1, 1005—5—3.2, 1005—8—2), and required the trial judge to set forth his reasons on the record in sentencing an offender convicted of a felony (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—1), and the court reasoned that these provisions were designed to develop a comprehensive record of the sentencing proceeding to enable an expanded scope of review. The appellate court concluded, relying upon *People v. Choate* (1979), 71 Ill. App. 3d 267, that the legislative purpose of eliminating unwarranted disparity in sentencing could only be accomplished if there were a corresponding increase in the authority of reviewing courts to scrutinize that discretion retained by the sentencing judges. The appellate court did not, however, address the question of a conflict between section 5—5—4.1 of the Unified Code of Corrections and Supreme Court Rule 615(b)(4), which provides in relevant part:

(b) "Powers of the Reviewing Court. On appeal the reviewing court may:

\*\*\*

(4) reduce the punishment imposed by the trial court." (73 Ill. 2d R. 615(b)(4).)

We initially address the arguments of the parties related to the appropriate standard of review of a sentence and the authority of a court of review to modify a sentence.

The State principally contends that section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1) infringes upon the exclusive power of this court to regulate by rule matters of appellate practice and procedure. The State argues, relying upon the decisions of this court in *People v. Perruquet* (1977), 68 Ill. 2d 149, *People v. Rege* (1976), 64 Ill. 2d 473, *People v. Bolyard* (1975), 61 Ill. 2d 583, and *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, that the provision directly contradicts Supreme Court Rule 615(b)(4) and is therefore unconstitutional. Assuming that the legislature could constitutionally authorize a change in the scope of appellate review of sentences, the State argues in the alternative that the "rebuttable presumption" standard contained in section 5—5—4.1 of the Unified Code of Corrections does not in fact expand the scope of review.

Defendants Cox and Stevens, in seeking to sustain the judgment of the appellate court, contend that no conflict exists between section 5—5—4.1 of the Unified Code of Corrections and Rule 615(b)(4). Defendants argue, relying upon language contained in *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, that our rule does not define the scope of review of a sentence and that section 5—5—4.1 of the Unified Code of Corrections therefore should be considered a complement to our rule rather than in conflict with it. Defendants also argue, assuming the constitutional validity of section 5—5—4.1 of the Unified Code of Corrections, that in defining

the authority of a court of review to reduce a sentence, our decisions relied in part upon the statutory provisions then in existence and that we therefore must reexamine this issue in light of the authority granted in section 5—5—4.1 of the Unified Code of Corrections.

Article VI, section 1, of the Illinois Constitution of 1970 states: "The judicial power is vested in a Supreme Court, an Appellate Court, and Circuit Courts." Judicial power is not defined in the Constitution, but all such power is exclusively and exhaustively granted to the courts. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 57; *People v. Jackson* (1977), 69 Ill. 2d 252, 256; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149.) If the power is judicial in character, it necessarily follows that the legislature is expressly prohibited from exercising it. (*People v. Jackson* (1977), 69 Ill. 2d 252, 256; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149; *People v. Bruner* (1931), 343 Ill. 146, 157.) It is equally clear that this court possesses the rulemaking authority to regulate the trial of cases (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 58), and the authority to regulate appeals (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 66). Although it is true that the legislature has the power to enact laws governing judicial practice where it does not unduly infringe upon the inherent powers of the judiciary (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 59; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149), where a rule of this court on a matter within the court's authority and a statute on the same subject conflict, the rule will prevail. (*People v. Jackson* (1977), 69 Ill. 2d 252, 259; *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 66; see generally L. Bonaguro, *The Supreme Court's Exclusive Rulemaking Authority*, 67 Ill. Bar. J. 408 (1979); Note, *People ex rel. Stamos v. Jones: A Restraint on Legislative Revision of the Illinois Supreme Court Rules*, 6 J. Mar. J. Prac. & Proc. 382 (1973).) "Were this not true, a basic tenet of our

democratic form of government would be destroyed, and the relevant constitutional provisions rendered nugatory. It is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department." *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149.

We initially note our agreement with the appellate court that the legislature, in enacting section 5—5—4.1 of the Unified Code of Corrections, intended to modify the standard of review of sentencing and intended to authorize a court of review to reduce a sentence of imprisonment to one of probation. We hold, however, that the provision is in direct conflict with the decisions of this court which have interpreted the scope of Supreme Court Rule 615(b)(4). In *People v. Perruquet,* interpreting our rule, we announced that the standard of review of a sentence claimed to be excessive is whether in fact the trial court exercised its discretion and, if so, whether this discretion was abused. (68 Ill. 2d 149, 154.) In *People v. Rege, People v. Bolyard,* and *People ex rel. Ward v. Moran,* we determined that Rule 615 does not authorize a reviewing court to reduce a sentence of imprisonment to one of probation. (See *People v. Rege* (1976), 64 Ill. 2d 473, 482; *People v. Bolyard* (1975), 61 Ill. 2d 583, 589; *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 556.) Rule 615, on its face, addresses itself to the reduction of a sentence, rendering inconsistent that portion of section 5—5—4.1 of the Unified Code of Corrections which authorizes a court of review to increase the sentence imposed by the trial court. To the extent that this provision is inconsistent with our rule, and the decisions defining the scope of our rule, section 5—5—4.1 of the Unified Code of Corrections infringes upon the exclusive power of this court to regulate by rule matters of appellate practice and procedure. (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 66.) Even if we were to

assume, as defendants suggest, that our rule did not address the standard of review of a sentence, section 5—5—4.1 would constitute an unauthorized legislative intrusion upon the manner in which cases are decided. (*Otis Elevator Co. v. Industrial Com.* (1922), 302 Ill. 90, 94.) Because we have determined that this provision is null and void, we need not address defendants' argument concerning its impact upon the authority of a reviewing court to reduce a sentence of imprisonment to one of probation.

Defendants Cox and Stevens argue in the alternative that the sentences imposed are excessive and that the trial court abused its discretion in entering their sentences. The facts of these individual cases are adequately developed in the appellate court opinion (77 Ill. App. 3d 59) and will be briefly restated here.

The stipulated facts introduced at defendant Cox's trial were as follows. On June 9, 1978, defendant was operating a motor vehicle in the parking lot of the "Great Skate" skating rink in Decatur. Two witnesses observed the defendant's vehicle "fishtailing" while proceeding at a speed of 25 to 30 miles per hour in the parking lot. Defendant's automobile struck another vehicle in the lot, caromed off the car, jumped a curb, and struck a group of children, one of whom was 13-year-old Sharon Uttinger. Uttinger died as a result of head injuries received from this accident. It was further stipulated that defendant admitted driving the automobile involved and that, in his words, he was "driving in a stupid way."

At defendant's sentencing hearing, the court examined the presentence report and noted that the investigating officer recommended against a sentence of probation. Defendant did not have a prior criminal record as either an adult or a juvenile. At the time of sentencing, defendant was employed as a laborer. The State recommended a two-year sentence of imprisonment.

The State called as its only witness Officer John Mickler of the Decatur police department. He testified that 12 persons, in addition to Sharon Uttinger, were injured as a result of this incident and that six of those individuals required hospitalization. He also testified that defendant's automobile did not stop after the collision but proceeded out of the parking lot and came to rest against a utility pole.

Defendant called Sharon Collins and Larry DeLong, special educators who were acquainted with defendant while he was a student at Eisenhower High School in Decatur. Defendant also called Joe Rickelman, a school psychologist who had conducted an examination of defendant. All three witnesses recommended that defendant be sentenced to probation, and Rickelman recommended a plan for continued education and vocational rehabilitation. Rickelman stated that defendant suffered from borderline mental retardation. In addition, all three witnesses noted defendant's frustrations as a result of his disability, acknowledged that he was at times emotionally unstable, and DeLong and Rickelman agreed that this instability would be aggravated by consumption of alcohol.

Defendant's brother, Mark Cox, and his mother, Shirley Cox, also testified on behalf of defendant. Both testified that they would assist defendant in complying with the terms of probation. They informed the court that defendant resided at home and would continue to do so. Mark Cox stated that the defendant was extremely remorseful about the incident and that he had received many threatening telephone calls. Shirley Cox testified that the defendant had been working and that he gave his earnings to her. Both testified that defendant had been driving for two years prior to the incident and had driven responsibly in the past.

Billy Dickerson, defendant's foreman, testified that

defendant was employed as a laborer at McNeely Builders for approximately 1½ months prior to the hearing. He stated that defendant was punctual, able to adapt to his work environment, and that defendant had maintained a good attendance record. He informed the court that defendant would continue in his employment if he were to be granted probation. On cross-examination, he stated that, several weeks prior to the hearing, defendant had accompanied his coworkers to a tavern where defendant had consumed one or two beers. Dickerson stated that defendant did not drive to work.

Defendant testified on his own behalf. He expressed his remorse over the incident and admitted that he had been drinking prior to losing control of his vehicle. With reference to his consumption of alcohol prior to the incident, defendant stated that this was the fault of the individual who sold him the alcohol without first verifying his age. He stated that he had frequently driven an automobile subsequent to the incident, and that his operator's license had not been revoked. Defendant also stated that he had received threats of physical harm, which referred to the incident at the skating rink. Defendant introduced a letter from an inmate at Vandalia Correctional Center containing a threat of physical harm and reference to the incident for which defendant was charged.

After hearing arguments of counsel, the trial judge discussed the aggravating and mitigating factors presented. He noted that defendant's emotional instability, his consumption of alcohol, and his misuse of an automobile resulted in the loss of a life and serious injury to others. The trial judge stated his consideration of the defendant's disability but balanced this consideration against the risk to society that the combination of the aforementioned factors presented. The court reasoned that a term of imprisonment was necessary to prevent further incidents

of this type. After consideration of the aggravating and mitigating factors presented, the court found that a term of imprisonment . was necessary for the protection of society.

The appellate court reduced the sentence of defendant Cox to a period of 30 months' probation, with a term of three months imprisonment as a condition thereof, and remanded the cause to the circuit court for the imposition of additional conditions of probation. The appellate court reasoned that the trial judge, in determining that imprisonment was necessary for the protection of society, had not considered the revocation of defendant's driver's license as an alternative means to eliminate the risk of future harm. The appellate court then reassessed the factors presented in aggravation and mitigation and concluded that the term of imprisonment would not stand.

Our review of the record reveals that the trial court carefully considered the evidence presented within the statutory framework prescribed. After consideration of the evidence presented in support of factors in mitigation, the trial judge balanced this evidence against the nature of the offense. We cannot conclude, on the basis of this record, that the trial judge erred in determining that a term of imprisonment was necessary for the protection of society. As we stated in *People v. Perruquet* (1977), 68 Ill. 2d 149, 159:

"[T] he trial judge is normally in a better position to determine the punishment to be imposed than the courts of review. [Citations.] A reasoned judgment as to the proper sentence to be imposed *** depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citation.] The trial judge, in the course of the trial and the sentencing hearing, has an

opportunity to consider these factors 'which is superior to that afforded by the cold record in this court.' "

The trial judge was charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and rehabilitation of the offender. This task was further complicated in the present case by defendant's disability, a factor which evokes both empathetic concern and cautious reservation. We have consistently held that it is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we would have balanced the appropriate factors differently if the task of sentencing had been ours. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 156.) We cannot say that the trial judge abused his discretion in the present case.

In the cause of defendant Stevens, the State concedes error in the sentencing procedure. This concession is premised upon the admission by the State that defendant did not present a threat to the public, and the failure of the trial judge to specify on the record that "probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1.) We also note that the State did not present any evidence offered in aggravation of the offense.

Section 5—6—1 of the Unified Code of Corrections provides in relevant part:

> "Sentence of Probation and of Conditional Discharge and Disposition of Supervision. (a) Except when specifically prohibited by other provisions of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstances of the offense, and to the history, character and condition of the offender, the court is of the opinion that:
>
> (1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or
>
> (2) probation or conditional discharge would deprecate

the seriousness of the offender's conduct and would be inconsistent with the ends of justice." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1.)

In view of this statutory provision, whenever a sentence of imprisonment or periodic imprisonment is imposed, the record must indicate that the judge is of the opinion that imprisonment is necessary for the protection of the public or that probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice. Substantial compliance with section 5—6—1 may exist even if the judge does not specifically say that "imprisonment is necessary for the protection of the public" or that "probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." If the record demonstrates substantial compliance with this requirement, then a reviewing court may alter the sentencing judge's disposition only upon a finding of an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153.

However, in the case of defendant Stevens, the record does not indicate whether the sentencing judge was of the opinion that she posed a threat to the public or that the imposition of a sentence of probation would deprecate the seriousness of her offense. Accordingly, her sentence must be vacated.

For the reasons stated, the appellate court's judgment in the cause of defendant Cox is reversed and the circuit court's judgment is affirmed. The judgment of the appellate court in defendant Stevens' cause is vacated, and the cause is remanded to the circuit court for reconsideration of the sentence.

*Judgments reversed;*
*sentence vacated;*
*cause remanded.*