THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD LUCAS, Defendant-Appellant.

Third District   No. 3—88—0804

Opinion filed March 27, 1990.

Frank W. Ralph, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

A jury convicted the defendant, Edward Lucas, of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(2)). The trial court subsequently sentenced him to a term of 30 years' imprisonment. He appeals. We affirm.

The record reveals that prior to the commencement of the trial, but after the jury was selected and sworn in, defense counsel asked the court to note that of the 30 prospective jurors questioned, two were black, and of those two, one was excused by the State and the other was chosen as an alternate. The court made note of this and asked the State to explain why it had excluded the black venire member. The prosecutor stated that he had done so because the venire member had indicated during *voir dire* that she was living alone with her young daughter. He explained that she was living in an area that might be affiliated with either one of the two gangs involved in the case, and therefore, she might be subject to harassment. The trial court accepted the prosecutor's explanation, and the case proceeded to trial.

The State presented the testimony of Stacey Pruitt, who testified that on the afternoon of May 24, 1988, he was in front of his house washing his car when the victim, Reynard Jones, and two other friends stopped by. A few minutes later, a car pulled up and one of his friends yelled, "He [*sic*] got a gun." Pruitt stated that he then saw the driver of the car, whom he recognized as Michael Rogers, fire a shot. He was, however, unable to identify the two passengers in the car. After the car drove away, he found the victim lying on the ground. Pruitt further testified that he was a member of the Stone Gang, which was affiliated with the Vice Lords.

Joliet police officer David Starcevich testified that upon arriving at the scene, he obtained a description of the fleeing car and an address of a place where the assailant might have obtained the weapon. When he went to that address, he did not find the car or its passengers. Starcevich testified that while he was driving in the area, however, he did see a car matching the description of the car involved in the shooting and subsequently stopped the car. Michael Rogers was driving it; Toby Jones was in the front passenger seat; and the defendant was in the left rear passenger seat.

The State also presented the testimony of witnesses who stated that they saw the defendant fire the shot from the back seat of the car. Those witnesses, who were members of the Vice Lords, testified that the victim was also a member of that gang and that the defendant and Rogers were members of the Black Gangsters, a rival gang. One of the witnesses stated that shortly before the shooting, there had been a confrontation between the two gangs.

The defendant testified that a confrontation had occurred earlier in the day when one of the Vice Lords hit Rogers' car with a brick. He stated that when they drove by Pruitt's house, members of the two gangs exchanged disparaging remarks about each other's gangs. He denied, however, having a gun in the car. The defendant testified that when the Vice Lords started coming towards Rogers' car, they drove away. Further, he stated that he did not know the victim and had not shot him. The jury subsequently found the defendant guilty of first degree murder.

The presentence investigative report stated that the 18-year-old defendant had no prior convictions or adjudications of delinquency. Though he had been placed on juvenile supervision in 1987, he had successfully completed the supervision period. The report further indicated that the defendant was the father of a two-year-old girl and that he planned to marry her mother in February of 1989. Prior to his arrest, the defendant had been employed for nine months at a flower-packing company. The report stated that the defendant intended to get his G.E.D. and eventually become a truck driver. The trial court subsequently sentenced him to a term of 30 years' imprisonment.

On appeal, the defendant argues that he was denied a fair trial by a jury of his peers, since the State excluded the only black from the jury through its use of a peremptory challenge. He further contends that the State's reason for excluding her was not racially neutral.

■ It is well settled that the equal protection clause forbids a prosecutor from peremptorily challenging potential jurors solely on account of race or on the assumption that black jurors as a group will

be unable to impartially consider the prosecutor's case against a black defendant. (*Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) A defendant contending that the prosecution's exercise of a peremptory challenge was racially motivated has the burden of showing purposeful discrimination. *Batson*, 476 U.S. at 94, 90 L. Ed. 2d at 86, 106 S. Ct. at 1721; *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.

■■■ In establishing a *prima facie* case of purposeful discrimination, (1) the defendant must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; (2) he may rely upon the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to do so; and (3) he "must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." (*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.) Regarding the third element, there must be some evidence showing that the exclusion was based on the prosecutor's improper, racially related motivations. That evidence may take numerous forms. (See *People v. Evans* (1988), 125 Ill. 2d 50, 530 N.E.2d 1360.) Once the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.

■■ In the instant case, the defendant met the first element of a *prima facie* case in that he is black and the prosecutor exercised a peremptory challenge to remove a black venire member. The second element is, of course, actually a presumption and need not be proved. The defendant failed, however, to prove the third element by showing that the exclusion was based on the prosecutor's improper, racially related motives. In fact, the only evidence of the prosecutor's motives showed that he was simply trying to avoid having a jury member who could be easily intimidated by the defendant's gang or the victim's gang. Contrary to the defendant's assertion, we find that the prosecutor's motive was racially neutral. See *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.

Though the trial court did ask the prosecutor to explain his reason for excluding the juror, we find unpersuasive the defendant's contention that that indicated that the court found that he had established a *prima facie* case. Rather, it appears from the record that the court made the request only as a precautionary measure. Accordingly, we

conclude that no error occurred as a result of the State's use of its peremptory challenge.

The defendant also argues that the trial court abused its discretion in sentencing him to 30 years in prison.

■■ Initially, we note that the sentence imposed upon a defendant will not be overturned on appeal absent an abuse of discretion by the trial court. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The trial judge is generally in a better position than a court of review to consider the defendant's credibility, demeanor, and general moral character. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ In the instant case, the defendant shot and killed a rival gang member who was merely talking with friends at the time. As noted by the trial court, this senseless act was committed simply to avenge a disparaging remark made about the defendant's gang. The trial court was in a superior position to determine the defendant's attitude and potential for rehabilitation, as well as the need to deter others from committing similar acts. We therefore conclude that the trial court did not abuse its discretion in sentencing the defendant to 30 years in prison.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

WOMBACHER and SCOTT, JJ., concur.