THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
AARON BIER, Defendant-Appellant.

Fourth District   No. 4—90—0421

Opinion filed February 28, 1991.

Randell S. Morgan, of Kinate & Morgan, of Fairbury, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Robert W. Mueller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Aaron E. Bier, was convicted by a jury of reckless homicide (Ill. Rev. Stat. 1989, ch. 38, par. 9—3) and sentenced to five years in the Department of Corrections. Defendant was also ordered to pay restitution of $64,775.82 by July 1, 1998. On appeal, defendant argues the trial court (1) erred by entering a restitution order requiring defendant to reimburse his own insurance company for payments to the victims, and (2) abused its discretion by sentencing defendant to the maximum term permitted upon a conviction of reckless homicide.

We affirm.

## I. FACTS

On June 18, 1989, defendant, who was then 21 years old, was driving a pickup truck on a blacktop road in McLean County. Two of defendant's friends were passengers. While proceeding north, defendant's truck reached the intersection of the blacktop road and Illinois Route 9. At that intersection, Route 9 was a through highway while the blacktop had stop signs for traffic in both directions. Without stopping, defendant's truck went through the stop sign which controlled his lane of traffic and collided with a vehicle which was stopped on the blacktop on the other side of the intersection. Just before the collision, defendant was driving 60 miles per hour. As a result of the collision, defendant's vehicle sustained major damage. Also, one of defendant's passengers suffered a fractured rib and various cuts and abrasions. Defendant suffered a separated shoulder.

Defendant struck a vehicle driven by Connie Duncan. Also in that vehicle were Kenneth James Duncan, her husband, and Michael and Julie Duncan, their children, who were 9 and 11 years old, respectively, at the time of the accident. Mrs. Duncan was killed. Kenneth Duncan's skull was fractured, several of his lower teeth were knocked out, six of his ribs were broken, his left arm was broken, the cornea of his left eye was lacerated, his left leg had multiple fractures, and his hip bone was fractured. He was hospitalized in intensive care for nearly two weeks and incurred $46,537.90 in medical bills. At some point in the future, Mr. Duncan will have to undergo surgery to remove a pin in his hip bone, a long plate and nails in his leg bone, and a pin inside his arm.

Michael Duncan suffered four fractures of the skull around the orbit of his left eye, a concussion, and some lacerations about his face and chest. He was hospitalized for several days. Because of the possibility that the bones around Michael's eyes were damaged in a growth area, it is possible that as Michael grows, the rest of his face will grow except for an area around his eyes, necessitating periodic plastic surgery.

Julie Duncan received lacerations to her face, chest, arms, and wrists.

For several months the surviving Duncans underwent counseling to help them deal with the loss of Mrs. Duncan.

On the afternoon prior to the accident, defendant had spent the day with several of his friends on the beach at Clinton Lake. Defendant was drinking beer that he had purchased earlier and brought to the beach in a cooler. Defendant's blood-alcohol content was 0.20 at the time of the accident.

## II. The Order Of Restitution

As previously noted, defendant was ordered to pay restitution of $64,775.82 by July 1, 1998. This figure was taken from the presentence report and reflects the following payments by insurance companies for medical and funeral expenses: $16,011.70 paid by Pekin Insurance, and $48,764.12 paid by Country Companies. On appeal, defendant does not challenge the order of restitution regarding Pekin Insurance because that company was the Duncans' insurance company, the victims in this case. Instead, defendant challenges the restitution ordered to Country Companies because that company was *defendant's* insurer and, defendant claims, is not entitled to any restitution. Defendant asserts that the trial court was without authority to direct him to pay his own insurance company for amounts paid to the

4

victims, arguing that a defendant who has taken the responsibility to make premium payments in order to have insurance should receive the benefits of his contract with his insurance company for payment to any victims. Defendant points out that while in most situations a victim's insurance company would be able to proceed by subrogation against a defendant for reimbursement of any payments the company made to their policyholder (the victim) as a result of the tortious or wrongful conduct of the defendant, the defendant's insurance company would have no such right. Instead, that company is merely paying out under the contract which a defendant had purchased.

■ Whatever merit these arguments may have as a matter of policy, they fail because of the plain language of the statutory provision which governs restitution, namely, section 5—5—6 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6). That section, in pertinent part, reads as follows:

> "(b) In fixing the amount of restitution to be paid in cash *** the court shall assess the actual out-of-pocket expenses, losses, damages, and injuries suffered by the victim named in the charge and such other victims who may also have suffered out-of-pocket expenses, losses, damages, and injuries proximately caused by the same criminal conduct of the defendant, *and insurance carriers who have indemnified the named victim or other victims* for such out-of-pocket expenses, losses, damages, or injuries, provided that in no event shall restitution be ordered to be paid on account of pain and suffering." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(b).)

We need not engage in discussions of policy when, as here, the language of the statute is clear on its face. That language provides that the trial court may order the defendant to pay restitution to "insurance carriers who have indemnified the named victim." The Country Companies is an insurance carrier who has indemnified the named victims in this case, the Duncans, for their out-of-pocket expenses, losses, damages, and injuries. Accordingly, the trial court acted within its discretionary authority by ordering restitution to be paid to Country Companies even though that company was defendant's insurer, not the victims' insurer.

In reaching this conclusion, we note that extensive revisions were made to section 5—5—6 of the Code by Public Act 83—1061. (Pub. Act 83—1061, eff. July 1, 1984 (1983 Ill. Laws 7226).) The purpose of these revisions, in part, was to broaden the scope of those persons or corporations to whom restitution could be ordered paid. In amending section 5—5—6 of the Code, the legislature chose to use the term "in-

surance carriers," not "the victim's insurance carrier." A glance at the hundreds of sections which comprised the Illinois Insurance Code in 1983 (Ill. Rev. Stat. 1983, ch. 73, par. 613 *et seq.*) refutes any suggestion that the legislature, at the time of the enactment of Public Act 83—1061, was unable to distinguish among the various kinds of business relationships with insurance companies and used the broad term—"insurance carriers"—by mistake when it really meant to use a more limited term.

### III. DEFENDANT'S FIVE-YEAR PRISON SENTENCE

Defendant's last argument is that the trial court abused its discretion by imposing a sentence of five years in the Department of Corrections, the maximum available for the defendant's conviction of the Class 3 felony of reckless homicide. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(6).) In making this argument, defendant points out that prior to his conviction in this case, he had no felony convictions and his misdemeanor convictions were for relatively minor offenses. Defendant is a high school graduate, had attended the University of Illinois for one year, and had worked since 1988 as a mechanic. His employer stated that defendant's job performance was good. Defendant had a good relationship with his parents, with whom he lived at the time of sentencing, and he claimed remorse for the injuries he caused to the victims. Defendant also claimed to have ceased drinking and to be attending counseling sessions. Last, he maintained that he had never even tried illegal drugs.

At the sentencing hearing, the record also revealed the following. From 1984 until May 1989, defendant was convicted of speeding on five separate occasions. On two of those occasions, when his speeding was not excessive, he was placed on court supervision. With regard to the three other speeding convictions, formal judgments were entered. In August 1985, defendant was fined $250 and $96 in court costs upon his speeding conviction. In February 1989, defendant was placed on conditional discharge for one year, fined $150, and ordered to pay $65 in court costs for driving 101 miles per hour in a 55-mile-per-hour zone. In June 1989, a month before the accident in the present case, defendant was fined and ordered to pay court costs for driving 82 miles per hour in a 55-mile-per-hour zone.

In December 1984, defendant was convicted of illegal transportation of alcohol; in December 1987, defendant was convicted of unlawful consumption of alcohol by a minor; and in February 1989, defendant was convicted of unlawful possession of alcohol by a minor. Furthermore, on the morning prior to the sentencing hearing in the

present case, defendant had been convicted of the Class 4 felony obstructing justice (Ill. Rev. Stat. 1989, ch. 38, par. 31—4). Defendant committed that offense after the accident in the present case when he, while driving an automobile, was stopped by a police officer and gave the officer a false name.

■ After reviewing the record, we find that the trial court carefully considered the evidence presented at trial and at the sentencing hearing. The court also considered the statutory factors in mitigation and aggravation (Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.1, 1005—5—3.2). In doing so, the court properly noted the terrible injuries suffered by the Duncan family as a result of defendant's drunken driving.

In *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, the supreme court had before it a case in which the defendant also was convicted of reckless homicide, sentenced to the penitentiary, and argued on appeal that the trial court abused its discretion by imposing a penitentiary sentence. The supreme court affirmed the imposition of the penitentiary sentence (and in the process reversed an earlier decision of this court which had accepted the defendant's argument (see *People v. Cox* (1979), 77 Ill. App. 3d 59, 396 N.E.2d 59)) and wrote the following:

"We have consistently held that it is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we would have balanced the appropriate factors differently if the task of sentencing had been ours. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 156[, 368 N.E.2d 882, 885].) We cannot say that the trial judge abused his discretion in the present case." *Cox*, 82 Ill. 2d at 280, 412 N.E.2d at 547.

■ We find the above analysis to be applicable here. As in *Cox*, we cannot say that the trial judge in the present case abused his discretion when he imposed the maximum sentence of five years.

In support of his argument that defendant's sentence is excessive, defendant cites *People v. Brogan* (1979), 76 Ill. App. 3d 957, 395 N.E.2d 408, a decision of this court in which a defendant was sentenced to five years in prison after the revocation of his burglary probation. (*Brogan*, 76 Ill. App. 3d at 959, 395 N.E.2d at 409.) This court reduced the defendant's sentence to two years' imprisonment and wrote the following:

"Defendant concedes that his failure to successfully complete any probationary period may be reason to find that some imprisonment was warranted; however, defendant contends that

sentences of imprisonment beyond the minimum must be justified by some other factor in the record and that the record is devoid of any grounds for imposition of a term beyond the minimum. We agree." *Brogan*, 76 Ill. App. 3d at 959, 395 N.E.2d at 409-10.

■■ We note that the decision of this court in *Brogan* preceded the decision of the supreme court in *Cox*. Accordingly, we hold that to the extent *Brogan* stands for the proposition that sentences in excess of the minimum provided by law must somehow "be justified," that decision is contrary to the law of this State as enunciated by our supreme court regarding the standard of review of sentences to be employed by the appellate court. To the extent that *Brogan* supports such an argument, it is overruled.

For the reasons stated, the sentences imposed upon the defendant are affirmed.

Affirmed.

SPITZ and KNECHT, JJ., concur.