THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES WILLIAMS, Defendant-Appellant.
First District (4th Division)   No. 1—91—0074

Opinion filed March 31, 1992.

Rita A. Fry, Public Defender, of Chicago (Murray M. Coffey, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara L. Jones, and Stephen Dinolfo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:
Defendant, James Williams, was convicted of aggravated arson (Ill. Rev. Stat. 1987, ch. 38, par. 20—1.1) (the Act) following a jury trial in the circuit court of Cook County and was sentenced to 20 years' imprisonment. On appeal, he contends that (1) the trial court abused its discretion in sentencing him to 20 years' incarceration; and (2) the Act is unconstitutional.
We affirm.
Defendant's conviction stems from a fire that occurred on October 8, 1988, at a three-story apartment building located in Chicago.

Joanne Winfield, landlord of the building, testified that she lived in the second-floor apartment of the building with her daughter, Latrice, son, Joseph, and boyfriend, Albert Wade. Claudia Craig lived in the first-floor apartment with her two daughters, three grandchildren and one adopted child, who is severely retarded. Iverson Dumas lived alone in the basement apartment.

The witness testified that she became romantically involved with defendant in January 1988, and that he moved into her apartment. She stated that she ended the relationship after she was mistreated by defendant. Defendant moved out of the apartment in August 1988. The witness further stated that defendant harassed her at work, at home, and over the telephone for approximately three weeks after he moved.

Winfield testified that she and Wade went to bed at approximately 10:30 p.m. on October 8, 1988. She stated that they were awakened by her daughter telling them the house was on fire. The witness further stated that both the front and back doors were engulfed in flames and that the only way to escape was by jumping out of the window. She further stated that her daughter seriously injured her leg by the jump and was taken to the hospital.

Latrice Wade, a college student, testified that on October 8, 1988, she left the apartment to take a friend home at 9:30 p.m. She stated that she saw defendant sitting in an adjacent alley talking to another person at that time. The witness further stated that when she returned home at 11:30 p.m., defendant was still sitting in the alley. She testified that about 45 minutes after she went to her room, she heard noises at the burglar gate outside her room. She testified that she and her brother went to the back door and saw "big red flames."

Albert Wade testified that he knew Winfield and defendant had a prior relationship which ended on bad terms. He testified that on the day before the fire he saw defendant grab Winfield by the collar and drag her into an adjacent alley. He stated that by the time he ran to the area, defendant had released her.

Claudia Craig testified that she knew both defendant and Winfield. The witness testified that on the day of the fire she spoke with defendant at her home. She stated that defendant threatened to burn down Winfield's garage if she had it repaired. The witness stated that both the front and back doors of her apartment were engulfed in flames and that she and her family were forced to escape through the front window.

Iverson Dumas testified that he and defendant worked at the same body shop. The witness testified that approximately one week

before the fire he saw defendant throw a glass of whiskey in Winfield's face. The witness further stated that on October 8, 1988, he saw defendant at a neighborhood bar at about 9 p.m. The witness testified that defendant was wearing a white hat and beige jacket. He further testified that he was at home later that evening watching television and that he smelled gas. He stated that he opened the door and saw defendant walking down the alley towards 69th Street. A short time later, the building was on fire.

Dumas further testified that after the police arrived, he pointed out defendant, who was standing across the street. The officer handcuffed defendant and placed him in the back seat of a patrol car with the witness. The witness testified that while in the car defendant told him not to say anything to the police because the "bitch is no good." Defendant was taken to the police station, and the witness was taken to the hospital.

Following jury deliberations, defendant was found guilty of aggravated arson and was sentenced to 20 years in the Illinois Department of Corrections. Defendant was 65 years old at the time of sentencing.

On appeal, defendant contends that in light of his age and the facts of this case, a 20-year sentence for aggravated arson is excessive.

When imposing a sentence, the trial court must balance between the protection of society and the rehabilitative potential of defendant. (*People v. Anderson* (1992), 225 Ill. App. 3d 636, 652, citing *People v. Cox* (1980), 82 Ill. 2d 268, 281.) Further, "[s]entencing is largely a matter of judicial discretion and, absent an abuse of that discretion, a sentence may not be altered on review." *People v. Morrison* (1991), 218 Ill. App. 3d 403, 405.

Here, the trial court recognized that because defendant was 64 when he was first arrested, any sentence would "significantly impact" the rest of his life. The court further noted that the charge of aggravated arson carries a minimum sentence of 6 years and a maximum of 30 years. However, the court stated that based on the "shocking" and "horrifying" facts of this case, a minimum sentence would be inappropriate. The court, therefore, sentenced defendant to 20 years' imprisonment.

■ On balance, we do not believe the trial court abused its discretion in sentencing defendant to 20 years' imprisonment. Defendant waited until approximately 11:30 p.m., when most of the apartment building residents were asleep, before he ignited both the front and back stairwells of the victims' homes. Having formerly lived in the building, defendant knew that several children and a severely re-

tarded person lived in the building. The residents on the first and second floors were forced to jump out of windows to save their lives. One victim seriously injured her leg by the jump and had to be taken to the hospital.

We, too, believe that the facts of this case are shocking and horrifying and therefore find that the trial court did not abuse its discretion in sentencing defendant to a term of 20 years' imprisonment. In doing so, we reject defendant's contention that his term should be reduced because he was reacting to a set of emotional variables which drove him to an irrational act.

■ Next, defendant contends that section 20—1.1 of the Act is violative of due process because it does not require an enhanced *mens rea* or any additional culpable intent than simple arson.

In *People v. Wick* (1985), 107 Ill. 2d 62, and *People v. Johnson* (1986), 114 Ill. 2d 69, our supreme court found that section 20—1.1 of the Act was unconstitutional. The court reasoned that since "aggravated arson, as defined by the statute, [did] not require an unlawful purpose in setting a fire, the statute [swept] too broadly by punishing innocent as well as culpable conduct." (*Johnson*, 114 Ill. 2d at 70.) The court further noted that the simple arson statute, a Class 2 felony, required a higher degree of malice or unlawful conduct than aggravated arson, a Class X felony. *Johnson*, 114 Ill. 2d at 70.

Subsequently, the Act was amended to define an underlying offense which may be enhanced to aggravated offense. The Act states in relevant part as follows:

> "A person commits aggravated arson when in the course of committing arson he knowingly damages, partially or totally, any building or structure, *** and (1) he knows or reasonably should know that one or more persons are present therein ***." Ill. Rev. Stat. 1987, ch. 38, par. 20—1.1.

In *People v. Thomas* (1990), 137 Ill. 2d 500, 521, the supreme court recognized that the Act, as amended, had been cured of its constitutional infirmities. The current statute, by incorporating the elements of arson, necessarily includes the mental state of knowledge. We therefore find defendant's contention without merit.

For the foregoing reasons, we affirm the ruling of the circuit court.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.