NOTICE

Decision filed 03/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231286-U

NO. 5-23-1286

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-1475 |
| | ) | |
| JACE R. BRADLEY, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held:* The trial court's order granting the State's petition to deny pretrial release is affirmed where the trial court's findings were not against the manifest weight of the evidence and the order denying pretrial release was not an abuse of discretion.

¶ 2   The defendant, Jace R. Bradley, appeals the trial court's order denying him pretrial release pursuant to Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] See Pub. Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).

---

[1]The press and politicians have also sometimes referred to the Act as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act.

1

¶ 3                                    I. BACKGROUND

¶ 4      On November 27, 2023, the defendant was charged, by information, with unlawful possession of a weapon by a felon in violation of section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2022)), a Class 2 felony. The same day, the State filed a petition to deny the defendant pretrial release, alleging the proof was evident and the presumption great that the defendant committed an offense listed in section 110-6.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a) (West 2022)) and the defendant posed a real and present threat to the safety of any person or persons or the community.

¶ 5      The trial court conducted a hearing on the State's petition on November 29, 2023. A pretrial investigation report revealed that the defendant was 28 years old and employed full-time. He had resided in Champaign for 10 years with his grandmother. He had two children, aged 10 and 2, as well as a fiancée and a lot of extended family members who lived in the Champaign area. He also had his own vehicle which would provide reliable transportation to court appearances if he were released from custody. The defendant reported that he had no history of drug abuse and no mental health diagnosis. He suffered from asthma. The defendant was currently serving 24 months of probation for aggravated unlawful use of a weapon in Champaign County case No. 21-CF-1142. He also had prior convictions for unlawful possession of cannabis in a motor vehicle, driving on a suspended license, and fleeing or attempting to elude a peace officer. The defendant scored a 4 out of a possible 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R).

¶ 6      The State proffered the following information regarding the current case. On November 25, 2023, Champaign County deputies attempted to stop a vehicle, later determined to be driven by the defendant, for speeding. Once the vehicle came to a stop, the front passenger jumped out of the vehicle and fled. The defendant then drove off, causing deputies to follow in pursuit for some

2

time. The defendant eventually pulled over a second time and exited the vehicle. During an initial "pat down" search of the defendant, an officer found a knife and a bag of cannabis. The defendant stated that he picked up some people he did not know from a party. He did not know the identity of the passenger or why he ran. A "blunt" was found in the center console of the vehicle that smelled of burnt cannabis. In a search incident to arrest, a black pistol magazine with seven rounds of 9-millimeter ammunition was found in the defendant's front right jean pocket. The defendant stated that he knew nothing about the ammunition. The State pointed out that the defendant was currently on probation for a charge of aggravated unlawful use of a weapon.

¶ 7     Defense counsel proffered that the defendant explained to officers that the short delay in the defendant's stopping for the traffic stop was due to his waiting for a familiar area in which to stop the vehicle. Although the officer found ammunition on the defendant, no firearm was found. Defense counsel stated that the defendant had two children, ages 10 and 2, and resided with and took care of his 82-year-old grandmother. He had a really good job as a night shift manager and his incarceration would cause hardship on his employer to find a replacement for him.

¶ 8     The State argued that the defendant was on probation for a similar charge and should have known that he was prohibited from possessing "any type of weapon or magazine or ammo or anything to that effect." It averred that if probation conditions could not prevent him from possessing a weapon, neither could other conditions.

¶ 9     Defense counsel argued that the State failed to meet its burden "that the defendant is a real and present threat of safety to any person or the community." She again noted that although ammunition was found, the defendant did not have a firearm. She further noted that there was no evidence of a high-speed chase that would have put law enforcement in danger. Counsel argued

3

that the defendant's release was important to his family and financial well-being. She averred that the defendant would agree to any conditions that the court deemed necessary.

¶ 10 The trial court stated it had "considered the facts presented, the pretrial investigation report, and arguments of counsel," and was "making an individualized decision based on all relevant factors whether specifically mentioned or not," and was "making all the findings reflected in the order whether specifically mentioned or not." In finding the State proved, by clear and convincing evidence, that the proof was evident or presumption great that the defendant committed a detainable offense, the court stated, "It's the ammunition. *** Now, he says that he doesn't—he denied any knowledge of where it came from, but that just lacks credibility. *** It's that very possession of the live ammunition that is the non-probationable Class 2 felony."

¶ 11 The trial court further found the State proved, by clear and convincing evidence, that no condition or combination of conditions could mitigate the real and present threat. It acknowledged the defendant appeared to have "stability and a stake in the community" in that he had two children, a stable residence with his grandmother of whom he took care, a "really good job," and his absence from his employment would be a hardship. However, the court noted, "The problem is that he is currently on probation—conditions of probation on an order for an unlawful use of weapon felony charge." The court found the defendant's explanation regarding the traffic stop "lacks credibility for today's purposes." Regarding the magazine containing ammunition found on the defendant, the court stated, "It has one value only, and that's to be stuck into a weapon and shot. Now the fact that he didn't have the pistol on him doesn't mean that it is not a crime that's indicative of serious danger. That's why it's subject to the mandatory prison penalties that the legislature's prescribed." The court then granted the State's petition, finding there was "no condition or combination of

4

conditions that the Court could impose here that could mitigate the real and present threat that [the defendant] poses to the safety of the community."

¶ 12    The trial court summarized its findings in a written order as follows:

"On November 25, 2023, police pulled over a vehicle driven by Defendant Mr. Bradley and, while arresting him for other offenses, located in his pocket a black pistol magazine loaded with seven 9mm rounds. Mr. Bradley has the felony conviction alleged and cannot lawfully possess the ammunition. Mr. Bradley denied knowledge of the magazine in his own pocket, which was not credible."

In further summary, the court wrote:

"During this offense, Mr. Bradley already was on Probation for Aggravated Unlawful Use of a Weapon, as well as Conditional Discharge in a misdemeanor traffic matter. The stop on November 25, 2023, happened like this: Police tried to pull over Mr. Bradley for speeding, the vehicle stopped, the front seat passenger jumped out and fled, and Mr. Bradley fled in the vehicle. After a vehicle chase, Mr. Bradley stopped and officers found a knife and a bag of cannabis on him, and a blunt in the center console that smelled of burnt cannabis. During his arrest they found the loaded magazine. Mr. Bradley has two children who live with their mothers, a great job, and he lives with his grandmother who depends on him in part for care, but there is only one use for a loaded 9mm pistol magazine to be possessed by someone on felony probation for Agg. UUW, it is extremely dangerous, and the legislature recognized that danger in making the offense non-probationable. That Mr. Bradley would commit this dangerous offense while under a Probation order, and despite his family and employer who depend on him, demonstrates along with

5

all other circumstances here that no conditions of release can mitigate the threat he poses to community safety."

The trial court then committed the defendant to the custody of the sheriff for confinement in the county jail pending trial and advised him of his appeal rights. The defendant timely appealed. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023).

¶ 13    The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant on appeal. On January 25, 2024, OSAD filed a memorandum in support of Rule 604(h) appeal on behalf of the defendant. On February 15, 2024, the State filed a memorandum in opposition to Rule 604(h) appeal.[2]

¶ 14                                    II. ANALYSIS

¶ 15    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)). A defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1. After filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk; and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the

---

[2]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before March 4, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)). If the trial court determines that the defendant should be denied pretrial release, the court is required to make written findings summarizing the reasons for denying pretrial release. *Id.* § 110-6.1(h)(1).

¶ 16    The statute provides a nonexclusive list of factors that the trial court may consider in making a determination of "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. *Id.* § 110-6.1(g). In making a determination of dangerousness, the court may consider evidence or testimony as to factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant[3]; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (*id.* § 110-5). *Id.* § 110-6.1(g).

---

[3]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2022).

7

¶ 17    To reverse a trial court's finding that the State presented clear and convincing evidence showing that mandatory conditions of release would fail to protect any person or the community, and/or that defendant had a high likelihood of willful flight to avoid prosecution, the reviewing court must conclude that the trial court's findings were against the manifest weight of the evidence. See *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12; see also *In re C.N.*, 196 Ill. 2d 181, 208 (2001) (setting a similar standard of review for requirement of clear and convincing evidence by the State in juvenile proceedings). " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *Swan*, 2023 IL App (5th) 230766, ¶ 12 (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). "Under the manifest weight standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Deleon*, 227 Ill. 2d at 332. The trial court's ultimate decision to deny pretrial release is reviewed for an abuse of discretion. *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 18    Once the trial court finds the State proved a valid threat to the safety of a person or persons or the community and/or a defendant's likely willful flight to avoid prosecution, then the court must determine what pretrial release conditions, "if any, will reasonably ensure the appearance of

a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2022). In its determination, the trial court must consider (1) the nature of the circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* No singular factor is dispositive. See *id.*

¶ 19    On appeal, defendant requests this court reverse the trial court's order denying him pretrial release. In support, defendant "checked" three issues for consideration on appeal. OSAD's Rule 604(h)(2) memorandum only addresses one of the issues. However, we will consider all the issues raised on appeal.

¶ 20    Defendant's first issue claims the State failed to meet its burden by proving, by clear and convincing evidence, that the proof was evident or the presumption great that he committed the offense(s) charged. This issue was not addressed in OSAD's memorandum. The defendant argues that "the State failed to provide a sufficient factual basis in its proffer" to meets its burden of proof and, thus, "Defendant cannot be denied pretrial release." The State argues that it proffered evidence that (1) deputies attempted to stop a speeding vehicle; (2) the vehicle was driven by the defendant; (3) when the vehicle initially stopped, the front passenger jumped out of the vehicle and fled; (4) the vehicle took off again with the deputy in pursuit with lights and sirens activated; (5) once the vehicle stopped for the second time, the officer found a knife and a bag of cannabis during a pat down of the defendant; (6) during the search incident to arrest, "a black pistol magazine with seven rounds of nine-millimeter ammo was located" in the defendant's "front right jean pocket";

9

and (7) the defendant was on probation for aggravated unlawful use of a weapon at the time of the current offense.

¶ 21 Upon our review of the record, we agree that the State's proffer addressed the defendant's possession of firearm ammunition and his prior felony conviction for the offense of aggravated unlawful use of a weapon for which he was serving a term of probation. Therefore, we find defendant's initial argument has no merit and hold that the trial court's finding that the State proved, by clear and convincing evidence, that the proof was evident or the presumption great that he committed the offense charged was not against the manifest weight of the evidence.

¶ 22 Defendant's second issue claims that the State failed to meet its burden of proving, by clear and convincing evidence, that the defendant posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. This issue is the sole contention addressed in OSAD's memorandum. In his notice of appeal, the defendant argues that "the State did not meet its burden by failing to allege sufficient specific, articulable facts which would show Defendant as a threat as enumerated in the factors set forth in 725 ILCS 5/110-6.1(g)." In its memorandum, OSAD argues the State "utterly failed to show" the defendant was a threat to safety. It opines that the defendant's only felony conviction was for possessing a firearm without a firearm owner identification (FOID) card, which was "the result of failing to seek proper paperwork for protected Second Amendment conduct." OSAD further argues that none of the defendant's "misdemeanor convictions involved violence or a weapon" and that although the defendant was on probation at the time of the offense, "nothing about the facts of the offense—possession of ammunition without a gun, driving away from the police before stopping— showed [the defendant] was a danger to anyone." OSAD asserts that the trial court "rested its finding of dangerousness on the bare charge and speculation." In support, OSAD argues that the

10

court erred by "suggesting that the only use of ammunition by a convicted felon is to harm someone." OSAD then posits a number of possible scenarios of why a person in the defendant's position might have ammunition, albeit all admittedly illegal, *i.e.*, to give the ammunition to a friend, to use it in a weapon for target practice, or to use it in a gun for self-defense. Conversely, the State argues that although no firearm was found on the defendant, "a reasonable inference can be drawn that he had ready access to at least one 9mm handgun."

¶ 23 Here, the trial court found the defendant posed a threat to the community. It noted the circumstances of the traffic stop leading up to the defendant's arrest in which the defendant's first stop included the flight of his passenger and the final stop came only after a police pursuit. The court further noted that a knife and a bag of cannabis were found on the defendant, there was a "blunt" in the center console of the vehicle that smelled of burnt cannabis, and the defendant was found with the loaded 9-millimeter pistol magazine on his person despite his being on probation for a similar offense. Given the proffers submitted and the pretrial services investigative report, we cannot find the trial court's finding that the State proved dangerousness, by clear and convincing evidence, was against the manifest weight of the evidence.

¶ 24 Defendant's third issue alleged that the State failed to meet its burden of proving, by clear and convincing evidence, that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or the defendant's willful flight. This issue was not addressed in OSAD's memorandum. The defendant argues that "the State failed to meet its burden because there are conditions as set for[th] in 725 ILCS 5/110-10(b) which would mitigate the threat and/or the willful flight risk." However, no argument regarding any of those conditions was presented on appeal.

11

¶ 25    Here, the trial court made a number of important observations. It noted, *inter alia*, the defendant was on probation for aggravated unlawful use of a weapon at the time of the instant offense. It further noted the defendant had people in his life who relied on him—his children, his mother, and his employer in particular—when he committed the current offense. In short, the defendant committed the current offense in spite of his important obligations to others and the terms of his order of probation. Under these facts, we cannot hold that the court's finding that the State proved, by clear and convincing evidence, that no condition, or combination of conditions, would mitigate against defendant's dangerousness, was against the manifest weight of the evidence.

¶ 26    Defendant's fourth issue contended that the conditions of release were not necessary to ensure the defendant's appearance in court, ensure the defendant does not commit any criminal offense, ensure that the defendant complies with all conditions of pretrial release, prevent the defendant's unlawful interference with the orderly administration of justice, or ensure compliance with the rules and procedures of problem-solving courts. This issue was not addressed in OSAD's memorandum. The defendant argues that the trial court "imposed additional conditions of release as set forth in the attached Conditions of Release Order." It further argues that "[t]he additional conditions are not necessary to ensure defendant's appearance in court, ensure that defendant does not commit any criminal offense, ensure compliance with pretrial conditions, prevent unlawful interference with the administration of justive [*sic*], or ensure compliance with the rules and procedures of courts. Furthermore, the additional conditions of release are not individualized or the lease [*sic*] restrictive means to accomplish the above goals." We find this last argument perplexing due to the fact that the trial court did not issue a conditions of release order or otherwise

order conditions of release. As no such order was entered, we find this argument to be without merit.

¶ 27 Here, none of the trial court's findings related to the defendant's commission of a qualifying offense, dangerousness, or a lack of condition, or combination of conditions, available to mitigate defendant's dangerousness were against the manifest weight of the evidence. As such, we hold that the trial court's ultimate disposition, denying pretrial release, was not an abuse of discretion.

¶ 28                                    III. CONCLUSION

¶ 29 For the foregoing reasons, we affirm the trial court's order granting the State's petition to deny the defendant pretrial release.

¶ 30 Affirmed.